Frank W. McINTYRE, Appellant

v.

The COMMISSION FOR LAWYER
DISCIPLINE, Appellee.

No. 05–04–01074–CV.

Court of Appeals of Texas,
Dallas.

Aug. 23, 2005.

Frank W. McIntyre, Dallas, for appellant.

Linda A. Acevedo, Office of the Chief Disciplinary Counsel, State Bar of Texas, Austin, for appellee.

Before Justices O'NEILL, RICHTER, and FRANCIS.

## OPINION

Opinion by Justice RICHTER.

Frank W. McIntyre appeals the trial court's judgment suspending him from the practice of law. In sixteen issues, McIntyre challenges the legal and factual sufficiency of the evidence and the sufficiency of the pleadings to support the trial judge's findings of fact, conclusions of law, and judgment. We affirm.

## BACKGROUND

McIntyre represented Vrasidas Pappas in a state court action against Sally Maglaris in a dispute over the rightful ownership of a restaurant. The result was a judgment in favor of Maglaris. Shortly after the final judgment was entered, McIntyre heard Maglaris was disposing of the restaurant's furniture and fixtures. McIntyre also represented three of Pappas's creditors, who contacted him to obtain advice about the removal of equipment from the restaurant. McIntyre referred the creditors to a bankruptcy lawyer, Joyce Lindauer, suggesting the filing of an involuntary bankruptcy. After the state court trial, but before the involuntary bankruptcy proceeding was initiated, Pappas disappeared. Although he was not able to discuss the matter with Pappas, McIntyre appeared as Pappas's counsel in the bankruptcy proceedings. When the involuntary bankruptcy petition was filed, McIntyre filed a suggestion of bankruptcy in the state trial court where the Maglaris case was pending, requesting immediate injunctive relief against Maglaris. In six paragraphs of his verified motion, McIntyre requested relief for Pappas "on his own behalf and on behalf of the bankruptcy trustee." McIntyre appeared ex parte before the trial judge. The trial judge granted the motion, treating it as a request for temporary restraining order, and set the matter for an injunction hearing.

In bankruptcy court, Maglaris moved to vacate the state trial court's order. United States Bankruptcy Judge Robert C. McGuire did not grant Maglaris's motion, declining to "sit as an appellate court" on the state trial judge's actions. Judge McGuire, however, furnished the state court judge a memorandum opinion, noting the "state court judge may have been misled into signing the order in question." Judge McGuire's opinion noted at the time the suggestion of bankruptcy was filed, no bankruptcy trustee had been appointed, and McIntyre did not represent any bankruptcy trustee for Pappas. Quoting the language in the motion that it was made on behalf of Pappas "and on behalf of the bankruptcy trustee," and the statement that "because all relief requested in this Motion is mandatory under the bankruptcy code and there are no questions of law or fact to be determined by this Court," the motion should be granted, Judge McGuire noted these statements were "legally false."

In an order dated April 27, 2001, state court judge David R. Gibson found "certain representations made to the Court by [McIntyre] . . ., whether orally or in writing, and upon which the Court signed its March 30 Order on an *ex parte* basis were inaccurate."

The bankruptcy proceeding in Judge McGuire's court was dismissed; Lindauer testified the clerk's office failed to send notice of a status conference and the case was dismissed when no one appeared. Pappas's creditors filed a second involuntary proceeding, which was assigned to United States Bankruptcy Judge Steven A. Felsenthal. In a letter to the United States Trustee dated August 14, 2001, Judge Felsenthal also questioned McIntyre's actions in the bankruptcy proceeding. Judge Felsenthal noted McIntyre had prepared and signed bankruptcy schedules and a statement of financial affairs for Pappas:

McIntyre signed the schedules and statement of financial affairs as attorney for the debtor, even though the signature required a declaration under penalty of perjury that Pappas read the answers and that they are true and correct. Pappas did not read the answers. McIntyre could not attest to the truth and correctness under penalty of perju-

ry for Pappas. McIntyre had no authorization from Pappas to perform these acts.

The judge concluded, "The court is concerned that McIntyre may have submitted false oaths to the court and that he may have engaged in the unethical and improper practice of law that may result in adverse consequences for his purported client."

Appellee filed a disciplinary action against McIntyre, alleging multiple violations of the Texas Disciplinary Rules of Professional Conduct. After a bench trial, the trial judge found McIntyre committed misconduct in violation of rules 1.01(a), 1.03(b), 3.03(a)(3), and 8.04(a)(3). *See* Tex. Disciplinary Rs. Prof'l Conduct 1.01(a), 1.03(b), 3.03(a)(3), and 8.04(a)(3), *reprinted in* Tex. Gov't Code Ann. § tit. 2, subtit. G app. A (Vernon 2005) (Tex. State Bar R. art. X, § 9). The trial judge filed findings of fact and conclusions of law in support of the judgment. In his conclusions of law, the trial judge found McIntyre represented Pappas in bankruptcy court when he was not competent to do so; represented Pappas in a bankruptcy proceeding without obtaining his client's consent; made false representations to the state court judge; and made false representations in the bankruptcy proceeding. As a sanction, the trial court imposed a partially-probated eighteen-month suspension and ordered as an ancillary sanction $21,347.42 in attorneys' fees. McIntyre appeals.

### Standards of Review

■ When the appellant is challenging the legal sufficiency of the evidence to support a finding on which he did not have the burden of proof at trial, he must demonstrate on appeal that no evidence exists to support the adverse finding. *Bellino v. Comm'n for Lawyer Discipline,* 124 S.W.3d 380, 385 (Tex.App.-Dallas 2003,

pet. denied). When reviewing a "no evidence" point, we determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005).

■ A trial judge's findings of fact are reviewed for factual sufficiency of the evidence under the same legal standards as applied to review jury verdicts for factual sufficiency of the evidence. *See Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996) (per curiam). When challenging the factual sufficiency of the evidence supporting an adverse finding upon which the appealing party did not have the burden of proof, the appellant must demonstrate there is insufficient evidence to support the adverse finding. *Bellino,* 124 S.W.3d at 385. In reviewing a factual sufficiency challenge, we consider and weigh all the evidence in support of and contrary to the finding, and will set aside a finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Bellino,* 124 S.W.3d at 385.

■ In making this review, we are not a fact finder. Thus, we will not pass upon the credibility of the witnesses or substitute our judgment for that of the trier of fact, even if a different answer could be reached upon review of the evidence. *See Dallas County v. Holmes,* 62 S.W.3d 326, 329 (Tex.App.-Dallas 2001, no pet.); *Tex. Farmers Ins. Co. v. Cameron,* 24 S.W.3d 386, 392 (Tex.App.-Dallas 2000, pet. denied). The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Barnett v. Coppell North Texas Court, Ltd.,* 123 S.W.3d 804, 813–14 (Tex.App.-Dallas 2003, pet. denied).

We review the trial court's conclusions of law de novo to determine whether they

are correct. *See Cohn v. Comm'n for Lawyer Discipline*, 979 S.W.2d 694, 697 (Tex.App.-Houston [14th Dist.] 1998, no pet.). Conclusions of law must be upheld on appeal if any legal theory supported by the evidence sustains the judgment, and will be reversed only if the conclusions are erroneous as a matter of law. *Cohn*, 979 S.W.2d at 697.

■ We review the sanctions imposed on an attorney for professional misconduct for abuse of discretion. *See Curtis v. Comm'n for Lawyer Discipline*, 20 S.W.3d 227, 234–35 (Tex.App.-Houston [14th Dist.] 2000, no pet.). A court abuses its discretion only when it acts in an unreasonable and arbitrary manner, or when it acts without reference to any guiding principles. *See Eureste v. Comm'n for Lawyer Discipline*, 76 S.W.3d 184, 202 (Tex.App.-Houston [14th Dist.] 2002, no pet.).

### DISCUSSION

#### COMPETENT REPRESENTATION

■ Appellant's first five issues challenge the trial court's findings and conclusions relating to rule 1.01(a) of the Texas Rules of Disciplinary Conduct. Rule 1.01(a) provides:

A lawyer shall not accept or continue employment in a legal matter which the lawyer knows or should know is beyond the lawyer's competence, unless:

(1) another lawyer who is competent to handle the matter is, with the prior informed consent of the client, associated in the matter; or

(2) the advice or assistance of the lawyer is reasonably required in an emergency and the lawyer limits the advice and assistance to that which is reasonably necessary in the circumstances.

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.01(a).

In his first conclusion of law, the trial judge concluded appellant represented Pappas in bankruptcy court when he was not competent to do so, in violation of rule 1.01(a). This conclusion was supported by several findings of fact. Finding of fact sixteen provided:

16. Respondent admitted to the bankruptcy judge in the hearings that he lacked competence to practice bankruptcy law and that he may have done something improper in signing the bankruptcy schedules. His conduct in the bankruptcy hearing led the bankruptcy judge to question his competence to practice before the bankruptcy courts.

In finding of fact fourteen, the trial judge noted appellant was apparently not aware of, and did not seek to learn, the procedures to be followed in order to represent an absent client in bankruptcy court. In finding of fact seven, the trial judge found the bankruptcy trustee had instructed appellant on the steps to be taken to be hired to represent the trustee, but appellant failed to take them.

The comments to rule 1.01(a) provide guidance in determining whether a matter is beyond a lawyer's competence. Comment 2 provides, "relevant factors include the relative complexity and specialized nature of the matter, the lawyer's general experience in the field in question, the preparation and study the lawyer will be able to give the matter, and whether it is feasible either to refer the matter to or associate a lawyer of established competence in the field in question." TEX. DISCIPLINARY R. PROFESSIONAL CONDUCT 1.01, cmt. 2.

Appellant challenges the trial judge's findings and conclusion on several grounds. Appellant first argues the trial judge's findings regarding his failure to take the necessary steps to be hired by the

bankruptcy trustee or to represent an absent client cannot support the judgment because there are no such allegations in the pleadings. A trial court's judgment must conform to the pleadings. TEX.R. CIV. P. 301. A party may not be granted relief in the absence of pleadings to support that relief. *Cunningham v. Parkdale Bank,* 660 S.W.2d 810, 813 (Tex.1983). Appellee was required to plead "a description of the acts and conduct that give rise to the alleged Professional Misconduct in detail sufficient to give fair notice to Respondent of the claims made," and a listing of the specific rules alleged to be violated. *See* TEX.R. DISCIPLINARY PROCEDURE 3.01.D, E. "A petition is sufficient if a cause of action or defense may be reasonably inferred from what is specifically stated." *Favaloro v. Comm'n for Lawyer Discipline,* 13 S.W.3d 831, 837–38 (Tex.App.-Dallas 2000, no pet.).

Appellee's amended petition alleged appellant violated rule 1.01(a). The petition included a section entitled "Competent Representation," and alleged acts and conduct of appellant in violation of rule 1.01(a). Appellee alleged appellant knew or should have known bankruptcy law was a specialized area of practice and the issues presented were beyond his competence; he failed to associate another attorney competent in the area; he admitted he did not regularly practice bankruptcy law; and Judge Felsenthal raised questions regarding appellant's representation of Pappas in bankruptcy court. In the "factual background" section of the pleading, appellee pleaded appellant admitted "he was not proficient in the practice of Bankruptcy Law"; admitted he had signed bankruptcy schedules under penalty of perjury without authority to do so; and stated he was doing the best he could in "unfamiliar territory." Appellee was not required to plead all of the evidence that might be introduced at trial. *See Paramount Pipe*

& Supply Co. v. Muhr, 749 S.W.2d 491, 494–5 (Tex.1988) (rules of civil procedure do not require plaintiff to set out in pleadings the evidence on which he relies to establish his cause of action). The judgment specifically provides appellant's conduct constituted a violation of rule 1.01(a). We conclude appellant had fair notice of the charges against him, and the pleadings supported the trial court's judgment. *See Favaloro,* 13 S.W.3d at 838.

■ Appellant next complains about the sufficiency of the evidence. He argues the circumstances surrounding his representation of Pappas in the bankruptcy court constituted an emergency within the meaning of rule 1.01(a). He argues the testimony of numerous witnesses established he handled the matter ethically and competently in the emergency situation. After reviewing all of the evidence, we hold the trial judge's findings are not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Bellino,* 124 S.W.3d at 385. While rule 1.01(a)(2) does allow "advice or assistance" by a lawyer in an area beyond his competence "in an emergency," the lawyer must limit the advice and assistance "to that which is reasonably necessary under the circumstances." Appellant continued to represent Pappas in the bankruptcy court after the initial involuntary filing and after the state court judge had addressed Maglaris's removal of property from the restaurant. As noted in his brief, he "prepared and filed Pappas's bankruptcy schedules, attended court hearings, attended the 341 meetings, maintained communications with the bankruptcy trustee and counsel for other parties, informed the trustee of valuable rights that needed to be protected, perfected the state court appeal to preserve the estate's rights, and located alternative counsel for the bankruptcy trustee." These actions went be-

yond offering advice and assistance to Pappas when Maglaris attempted to enforce the judgment and Pappas's creditors filed the involuntary bankruptcy, the circumstances appellant contends constituted the emergency.

Appellant cites to the testimony of several witnesses to establish his competence in bankruptcy law. Appellant cites Joyce Lindauer's testimony that the bankruptcy proceeding benefitted Pappas; appellant could not have done anything to prevent the bankruptcy from going forward; a challenge to the bankruptcy would have only increased the cost to the estate; the bankruptcy would have proceeded without appellant, and Pappas was better served with appellant's efforts than without; appellant was in a difficult situation and tried to do the right thing; the bankruptcy trustee's actions hurt appellant and Pappas; appellant was one of her students in a bankruptcy course in law school; and he had consulted with her about bankruptcy matters after his graduation. Professor Frederick C. Moss and former supreme court justice Robert A. Gammage provided expert testimony regarding appellant's ethical obligations, but both witnesses disclaimed any expertise in bankruptcy law and practice.

Other evidence supports the trial court's conclusion appellant knew or should have known representing Pappas in the bankruptcy court was beyond his competence. Appellant testified he had never represented a client in a bankruptcy case. His experience was limited to representing himself as a creditor in a bankruptcy proceeding on at least two occasions. Lindauer acknowledged appellant was not a regular bankruptcy practitioner, and further acknowledged an involuntary bankruptcy proceeding was not "ordinary" bankruptcy practice.

Appellant represented to Judge Gibson he sought relief on behalf of the bankruptcy trustee when a bankruptcy trustee had not yet been appointed. He represented to Judge Gibson the relief requested was mandatory under the bankruptcy code. Judge McGuire found both of these representations to be "legally false." Setting aside the question of whether these representations were made intentionally, appellant was at least mistaken as to the applicable procedure and substantive law at the outset of the involuntary bankruptcy.

Later, appellant signed and filed bankruptcy schedules of Pappas's financial affairs under penalty of perjury. Nancy Resnick, an attorney with the United States Trustee's office in charge of monitoring certain cases in the bankruptcy courts, testified "the declaration to be signed under penalty of perjury as to the accuracy of your financial affairs, your assets, and liabilities has to be signed by the debtor." Resnick also testified an attorney can obtain a special power of attorney to represent an absent debtor. Again setting aside any issue of intent, Judge Felsenthal noted appellant was not the debtor and had no authority to sign the schedules under penalty of perjury. In response to Judge Felsenthal, appellant stated, "quite frankly, I'm not a regular bankruptcy petitioner," and conceded "perhaps I did something improper." While appellant argues this is not a concession he was not competent to handle the bankruptcy, it is evidence he was not familiar with the applicable bankruptcy law and procedure.

Judge Felsenthal also informed appellant he could not represent the bankruptcy trustee, as he had not obtained an order from the court authorizing him to do so. The bankruptcy trustee, Scott Seidel, testified he assisted appellant with preparing the application for employment because appellant did not know how to prepare

one. The application, however, was never filed, so the necessary court order was never obtained. While appellant places the responsibility on Seidel to ensure the application was filed, the end result was that appellant was never properly authorized to represent the trustee. Regardless of appellant's intent, the applicable bankruptcy procedures were not followed.

All of these problems were brought to appellant's attention. Both bankruptcy judges presiding over the involuntary proceeding raised questions about appellant's representation of Pappas in bankruptcy court. We hold the evidence was legally and factually sufficient to support the trial court's findings and conclusions that appellant knew or should have known he was not competent to accept and continue employment as Pappas's counsel in bankruptcy. We overrule appellant's first five issues.

### COMMUNICATION

██ Appellant's next three issues complain of the legal and factual sufficiency of the evidence to support the trial judge's findings and conclusions he violated rule 1.03(b). Rule 1.03(b) provides: "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

The trial judge concluded appellant represented Pappas in a bankruptcy proceeding and filed bankruptcy statements and schedules "without first discussing, explaining or the client having consented to such filings" in violation of rule 1.03(b). In finding of fact number eleven, the trial judge found appellant told the state court "he had no contact with Pappas for over 30 days and Pappas was not in the country." In findings of fact fourteen and fifteen, the trial judge found:

14. Respondent filed documents in the bankruptcy proceedings on behalf of Pappas without consulting with or having any contact with Pappas before the filing of same. Pappas has never been notified by Respondent of the bankruptcy filing nor has Pappas authorized Respondent to make any filings or appearances in bankruptcy court for him.... 15. From the time that the bankruptcy case was filed until the dismissal of the bankruptcy case Respondent made no continuing effort to locate and communicate with Pappas.

Appellant does not contend he consulted Pappas about the bankruptcy proceedings or allege Pappas was aware the bankruptcy cases had been filed. He cites his efforts to reach Pappas through telephone calls to Pappas's sister-in-law. He further contends he could not ethically withdraw from representing Pappas when he had been unable to reach him for only a short time. Appellant contends Pappas's goal, and direction to his lawyer, was to recover his interests in the restaurant. Appellant contends the goal never changed, and he had to act in "exigent circumstances" to protect Pappas's interests. Appellant cites testimony from Professor Moss that he was required to wait approximately six months before he could draw the conclusion his client did not intend to return to participate in the litigation.

The trial judge's findings on this issue are based upon appellant's actions in the bankruptcy court, not the state court action. Without his client's knowledge or consent, appellant consented to the involuntary bankruptcy and filed schedules under penalty of perjury on behalf of his client. While appellant cites authority from other states regarding permissible actions in a client's absence, *see* FORMAL OPINION No. 2002–160 (CALIF. STATE BAR STANDING COMM. ON PROF. RESP. AND CONDUCT

2002), and FLORIDA BAR OPINION 72–36 (FL. 1987), these opinions speak to actions such as filing suit to prevent the running of the statute of limitations and settling a case where a client has given previous written authority to settle.

The California opinion is *instructive*. There, the client disappeared, and the attorney received two settlement offers. The client had authorized the attorney to accept settlement offers of two-thirds or more of the amount sought in any claim. One settlement offer was for two-thirds of the amount of the claim; the other was for one-half the amount. As to the first offer, the attorney should exercise professional judgment on behalf of the client whether or not to accept the offer. FORMAL OPINION No. 2002–160 at § I. The attorney could not, however, accept any proposed settlement which contained substantive terms at variance with the authority conferred by the client. *Id.* As to the second offer, the attorney was "not authorized to determine independently what is in Client's best interests from a substantive as opposed to a procedural standpoint." *Id.* at § II. The attorney "cannot know all of the objective and subjective circumstances and considerations that govern Client's substantive decisions, and any decisions outside of client's authorization therefore must be left to client." *Id.* Therefore, the attorney could not accept the second offer. *Id.*

Here, while Pappas had instructed appellant to recover his interests in the restaurant, there was no evidence the authority extended to making decisions and representations regarding Pappas's overall financial condition and obligations in bankruptcy court. As the trial judge noted, "Bankruptcy actions taken by the Respondent were such that a reasonable attorney, although a relatively short period of time had lapsed, should have concluded that he was not able to go forward without consultation with his client, especially in light of the fact that the client had no notice of the bankruptcy filing at all." There was sufficient evidence from which the trial judge could conclude appellant failed to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation" in violation of Rule 1.03(b). We overrule appellant's issues six, seven, and eight.

CANDOR TOWARD THE TRIBUNAL

■ In his ninth, tenth, and eleventh issues, appellant complains of the legal and factual sufficiency of the evidence to support the trial judge's findings and conclusions he violated rule 3.03(a)(3). This rule provides: "A lawyer shall not knowingly: ... (3) in an ex parte proceeding, fail to disclose to the tribunal an unprivileged fact which the lawyer reasonably believes should be known by that entity for it to make an informed decision." Appellant also complains about the sufficiency of the Commission's pleadings to support the judgment.

The trial judge concluded, "Respondent made false representations to the state court judge in violation of Rule 3.03(a)(3), Texas Disciplinary Rules of Professional Conduct." In support of this conclusion, the trial judge found:

7. The state court judge entered an Order based on the Respondent's pleadings and argument, which contained untrue statements, and stayed further proceedings. Respondent represented to the state court judge that he represented the bankruptcy trustee when he did not nor had he taken the appropriate steps to be hired by the bankruptcy trustee....

9. The bankruptcy judge entered a Memorandum Opinion and forwarded a copy to the state court judge. The

bankruptcy judge noted that the state court judge may have been misled into signing the order.

10. The state court judge vacated his stay order based on the opinion from the bankruptcy judge regarding misrepresentations made to the state court judge by the Respondent.

Appellant first urges the pleadings do not support the judgment on rule 3.03(a)(3) because appellee failed to allege any knowing failures to disclose facts which appellant reasonably believed should be known to Judge Gibson for him to make an informed decision. In its amended petition, appellee alleged appellant made false representations to Judge Gibson on which Judge Gibson relied in granting appellant's motion for immediate injunctive relief. Appellee pleaded specific statements in the suggestion of bankruptcy that were false, including appellant's allegation he sought relief on behalf of the bankruptcy trustee and that the relief requested under the bankruptcy code was mandatory. As noted above, appellee was required to plead "a description of the acts and conduct that give rise to the alleged Professional Misconduct in detail sufficient to give fair notice to Respondent of the claims made," and a listing of the specific rules alleged to be violated. See TEX.R. DISCIPLINARY PROCEDURE 3.01.D, E. Appellee's amended pleading described appellant's conduct at the ex parte hearing before Judge Gibson, and alleged appellant violated rule 3.03(a)(3). The petition was sufficient if a cause of action could be reasonably inferred from what was specifically stated. See Favaloro, 13 S.W.3d at 837–38. The judgment specifically provides appellant's conduct constituted a violation of rule 3.03(a)(3). We conclude appellant had fair notice of the charges against him, and the pleadings support the trial court's judgment. See Favaloro, 13 S.W.3d at 838.

■ Appellant urges the evidence is legally and factually insufficient to support the trial judge's findings and conclusions of a violation of rule 3.03(a)(3). Appellant contends there is no evidence of any knowing conduct on his part. He contends his arguments regarding the automatic stay in bankruptcy were "well grounded" in the bankruptcy code, made by "a state court lawyer who did not practice bankruptcy law on a regular basis," who was "focusing solely on protecting the assets" and "not thinking of the legal fine points," and argues he never intended to imply he had been employed as counsel for the bankruptcy trustee. Appellant's motion, however, states unequivocally, six times, that the motion sought relief "on behalf of the bankruptcy trustee," and further states, equally unequivocally, that "all relief requested in this Motion is mandatory under the bankruptcy code and there are no questions of law or fact to be determined by this Court." The evidence showed a bankruptcy trustee had not been appointed at the time of the motion. Appellant verified under oath that all the statements in the motion were based on his personal knowledge and true. Judge Gibson testified he relied on these representations in making his ruling at the ex parte hearing: "My decision was driven by the bankruptcy and representations about the bankruptcy." The trial judge's finding appellant violated rule 3.03(a)(3) is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. See Bellino, 124 S.W.3d at 385. We overrule appellant's issues nine, ten, and eleven.

MISCONDUCT INVOLVING DISHONESTY, FRAUD, DECEIT OR MISREPRESENTATION

■ In his twelfth and thirteenth issues, appellant challenges the legal and factual sufficiency of the evidence to sup-

port the trial judge's findings and conclusions he violated rule 8.04(a)(3). This rule provides: "A lawyer shall not: ... (3) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

In his fourth conclusion of law, the trial judge stated: "Respondent made statements in the bankruptcy filings that he could not know were true or accurate and made false representations regarding his status in the bankruptcy proceedings in violation of Rule 8.04(a)(3), Texas Disciplinary Rules of Professional Conduct." The relevant findings of fact are as follows:

14. Respondent filed documents in the bankruptcy proceedings on behalf of Pappas without consulting with or having any contact with Pappas before the filing of same. Pappas has never been notified by Respondent of the bankruptcy filing nor has Pappas authorized Respondent to make any filings or appearances in bankruptcy court for him.... Respondent made representations in the documents filed with the bankruptcy court for which he had no knowledge of the truth thereof or the basis for such filings.

16. Respondent admitted to the bankruptcy judge in the hearings that he lacked competence to practice bankruptcy law and that he may have done something improper in signing the bankruptcy schedules. His conduct in the bankruptcy hearing led the bankruptcy judges to question his competence to practice before the bankruptcy courts.

Appellant contends he had the duty and authority to represent Pappas in the bankruptcy, and there was insufficient evidence of any false information in the bankruptcy schedules he filed. Therefore, he argues, there was no or insufficient evidence to support the trial judge's findings and legal conclusion regarding rule 8.04(a)(3). Appellant cites to evidence he had Pappas's authority to recover his interest in the restaurant, and evidence he only signed his own name to the schedules and only listed debts and assets he knew about from representing Pappas for eighteen months. Appellee offered no evidence the debts listed on the schedules were erroneous or false. Professor Moss and Justice Gammage testified there was nothing deceitful in signing the schedules under penalty of perjury where appellant was representing only that he had read the schedules and they were true and correct to the best of his knowledge.

Appellee argues "[i]t was the very filing of the pleadings and documents that constitute the misrepresentation because in doing so McIntyre was representing to the Court and others involved in the proceeding that Pappas knew of the proceedings, that Pappas had consented to the involuntary bankruptcy, and that Pappas approved the financial statement and schedules, when in fact this was not true." Judge Felsenthal and appellant had the following exchange at a hearing in the second bankruptcy proceeding:

THE COURT: Okay. And you signed under penalty of perjury for the debtor on the schedules?

MCINTYRE: That's correct.

THE COURT: And you have no authority to do that. You're not the debtor.

MR. MCINTYRE: Well, I'm not the debtor and, quite frankly, I'm not a regular bankruptcy petitioner.

THE COURT: Well, you are an attorney. You know what it means to sign something under penalty of perjury.

MCINTYRE: I understand. And—and what the statements—I read the schedules and I read the—the—what I know about the—the financial affairs of the debtor come from my—

THE COURT: You had no business signing those.

MCINTYRE: Well, perhaps I did something improper.... And if I've done something improper, you know, I'll answer for whatever impropriety I have committed with respect to filing the schedules. But if I may at least say that my knowledge—that the information that's contained in the schedules comes from my personal knowledge of having represented the debtor in an account—in a suit for an accounting over the course of about a year and a half.

Despite appellant's arguments, Judge Felsenthal stated later in the hearing, "Mr. McIntyre conceded he signed under penalty of perjury as if he were the debtor without authority to sign," after noting there were "very serious concerns" about the proceeding. Judge Felsenthal also noted, "[t]he problem with this case is that it appears, if you accept the face of the record, that the debtor agreed to the filing. But it hasn't." As noted in the California bar opinion discussed above, an attorney "cannot know all of the objective and subjective circumstances and considerations that govern Client's substantive decisions, and any decisions outside of client's authorization therefore must be left to client." *See* Formal Opinion No. 2002–160 at § II. In discussing whether an attorney must or may withdraw from representing an absent client, Professor Moss testified, "[i]t depends on whether you can reasonably and prudently continue to represent him without doing something that you cannot do without his consent." The trial judge found appellant made representations in the bankruptcy court filings "for which he had no knowledge of the truth thereof of or the basis for such filings." Appellant himself argues he included on the schedules only information of which he was personally aware. The trial judge concluded appellant signed the declaration

pages of the bankruptcy schedules and statements of financial affairs "without Pappas ever having seen the documents, without Pappas' input or completion of the documents, nor any indication that [appellant] knew or could know whether the information was correct, complete and correct." The trial judge also stated:

> Respondent executed the declarations without any indication of his authority to sign the documents, without explanation to the bankruptcy court of his capacity, other than as an attorney, or any disclaimers contained therein. By his signature he avers the statements are true and correct. Without being able to do so, as such is a misrepresentation.

From the evidence presented, the trial judge could have found appellant's signatures under penalty of perjury and his consent to the bankruptcy were representations Pappas knew of the bankruptcy, consented to it, and approved the schedules, when Pappas did not do so. The trial judge's finding appellant violated rule 8.04(a)(3) is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Bellino,* 124 S.W.3d at 385; *see also Eureste,* 76 S.W.3d at 198 (fraud not the only conduct prohibited by rule 8.04(a)(3); any conduct involving dishonesty, deceit, or misrepresentation also prohibited by rule 8.04(a)(3)). We overrule appellant's twelfth and thirteenth issues.

### Sanctions and Attorneys' Fees

In his fourteenth, fifteenth, and sixteenth issues, appellant challenges the legal and factual sufficiency of the evidence to support his suspension from the practice of law and the award of attorneys' fees to appellee. He specifically challenges the trial court's findings he is a continuing threat to his clients and the public; he should be suspended from the

practice of law for eighteen months; and he should not practice bankruptcy law without associating a bankruptcy specialist for eighteen months. A trial court has broad discretion to determine the consequences of professional misconduct. *See Eureste,* 76 S.W.3d at 202. An appellate court should only reverse the trial court's decision if the trial court acted in an unreasonable or arbitrary manner, or acted without reference to guiding rules and principles. *Id.* As noted in *Curtis:*

> in determining the appropriate sanction for attorney misconduct, a trial court must consider the nature and degree of the professional misconduct, the seriousness of and circumstances surrounding the misconduct, the loss or damage to clients, the damage to the profession, the assurance that those who seek legal services in the future will be insulated from the type of misconduct found, the profit to the attorney, the avoidance of repetition, the deterrent effect on others, the maintenance of respect for the legal profession, the trial of the case, and other relevant evidence concerning the attorney's personal and professional background.

*Curtis,* 20 S.W.3d at 235 (citing *State Bar of Texas v. Kilpatrick,* 874 S.W.2d 656, 659 (Tex.1994), and Tex.R. Disciplinary Procedure 3.10). These factors were brought to the trial judge's attention during the hearing on the sanctions imposed.

Appellant argues the sanctions are an abuse of discretion because the trial judge did not find any damage to Pappas or to an opposing party and did not find appellant profited by his actions. He also argues the sanction allows appellee to usurp appellant's professional judgment in selecting the means by which to achieve the client's objectives. He also argues the sanction discourages zealous advocacy, requiring an attorney to "sit and do nothing"

without specific instructions from the client. The trial judge, however, considered these arguments and noted appellant sometimes went too far in actively urging his and his client's position. He also noted his primary concern in the sanctions was appellant's candor to the court, stating, "you have got to have the respect of the other parties in this process, including the judiciary. That is a very difficult job to do and has to rely upon the attorneys to present matters with them, be candid with them, and present legally and factually correct matters to them." He ordered appellant to attend seminars on the lawyer's creed, in addition to an eighteen month suspension of which ninety days were to be actively served and the remainder to be probated. The record reflects the trial judge acted with reference to the relevant guiding principles and did not act in an unreasonable or arbitrary manner in tailoring the sanctions imposed on appellant. *See Eureste,* 76 S.W.3d at 202–03 (trial court did not abuse its broad discretion in imposing sanction of suspension considering range of sanctions available, conduct at issue, and trial court's reasoning); *Curtis,* 20 S.W.3d at 235 (sanctions suspending attorney for one year, six months active and six months probated, were not abuse of discretion where trial court found violations of several rules of disciplinary conduct including conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of rule 8.04(a), and sanctions were less severe than advocated by commission at trial).

McIntyre also challenges the award of attorneys' fees to appellee. He concedes appellee may recover reasonable and necessary attorneys' fees under the rules of disciplinary procedure, but argues the fees incurred were neither reasonable nor necessary. He contends the commission was not the prevailing party on the primary issues in the case, and complains the com-

mission failed to segregate its fees between the issues on which it prevailed and the issues on which it did not prevail, and therefore is not entitled to an award of any attorneys' fees. Appellant does not cite authority for this proposition. The trial judge heard evidence from the commission regarding its fees, and appellant vigorously cross-examined the commission's attorney as to the reasonableness and necessity of the fees and costs. The trial judge also heard testimony from appellant relevant to the costs incurred by the commission. The trial judge did not abuse his discretion in the award of attorneys' fees and costs to the commission. *See Curtis,* 20 S.W.3d at 235 (attorney fees and court costs are appropriate sanction for violating disciplinary rule; no abuse of discretion to award fees and costs consistent with commission's evidence). We overrule appellant's fourteenth, fifteenth, and sixteenth issues.

We affirm the trial court's judgment.