# IN THE SUPREME COURT OF TEXAS

No. 18-0879

COMMISSION FOR LAWYER DISCIPLINE, PETITIONER,

v.

MARK A. CANTU, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

**PER CURIAM**

In this attorney discipline case, the trial court rendered judgment disbarring Mark Cantu. The court of appeals reversed due to the admission of testimony by the federal bankruptcy judge who oversaw Cantu's personal bankruptcy proceedings. Because we agree with the Commission for Lawyer Discipline (the CLD) that allowing the judge's testimony was not error, we reverse the court of appeals' judgment and remand the case to that court.

This disciplinary action arose from Cantu's conduct in his personal bankruptcy proceeding, in which Judge Marvin Isgur denied a bankruptcy discharge because of misconduct by Cantu during the bankruptcy proceeding. Judge Isgur prepared a 72-page Memorandum Opinion (the Opinion) explaining his decision. He also concluded that his ethical obligations required him to notify the State Bar of Texas of Cantu's conduct. Based on the conduct described in the Opinion, the CLD brought a disciplinary action against Cantu. The CLD alleged violations of several of

the Disciplinary Rules of Professional Conduct: Rule 3.02 (prohibiting lawyers from "taking a position that unreasonably increases the costs or other burdens of the case or that unreasonably delays resolution of the matter"), Rule 3.03(a)(1) (prohibiting lawyers from "knowingly making false statements of material fact or law to a tribunal"), Rule 3.03(a)(5) (prohibiting lawyers from knowingly offering false evidence), Rule 3.04(d) (prohibiting lawyers from knowingly disobeying a standing rule or ruling by the tribunal), and Rule 8.04(a)(3) (prohibiting lawyers from "engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation"). TEX. DISCIPLINARY RULES OF PROF'L CONDUCT R. 3.02, 3.03(a)(1), (5), 3.04(d), 8.04(a)(3), *reprinted in* TEX. GOV'T CODE. ANN. tit. 2, subtit. G, app. A (Tex. State Bar R. X § 9).

The disciplinary case was tried to a jury. The CLD called Cantu, the bankruptcy trustee, and Judge Isgur to testify. The bankruptcy trustee testified at great length about Cantu's conduct. The CLD initially designated Isgur as an expert witness but opted before trial to call him as a fact witness. Cantu objected to Judge Isgur's testimony before and during trial. After lengthy discussions with counsel, the trial court endeavored to limit Judge Isgur's testimony to the rulings he made in bankruptcy court as reflected in his Opinion. The trial court also permitted the CLD to admit a heavily redacted copy of the Opinion itself. Over 81 objections, the Opinion was redacted to include those portions that had been explored by the witnesses.

Judge Isgur's testimony was relatively brief but certainly damaging to Cantu. He described his personal background and the role of a federal bankruptcy judge. He testified that he denied Cantu's discharge. He recited certain findings from his Opinion. He testified that Cantu: "displayed a pattern of omission, obfuscation and noncompliance"; "had given false oaths in the bankruptcy court"; "improperly concealed and transferred assets"; "refused to comply with lawful

2

Court orders"; "failed to keep adequate records" as required by the Bankruptcy Code; and "withheld information from the trustee." Judge Isgur further testified that Cantu violated various court orders and that he had ordered Cantu to pay sanctions for violations of the automatic bankruptcy stay. He explained that this conduct was the basis for his decision to deny Cantu's discharge and that he had forwarded a copy of his Opinion to the State Bar of Texas and the chief judge of his federal district court.

Cantu offered several expert witnesses who opined that his conduct did not violate the disciplinary rules. The jury found that Cantu violated all the disciplinary rules alleged by the CLD, except for Rule 3.04(d). The trial court found that disbarment was the proper sanction for each of the four rule violations and rendered judgment disbarring Cantu. Cantu appealed on several grounds. The court of appeals reversed and remanded for a new trial. The court of appeals concluded, over a dissent, that admission of Judge Isgur's testimony was reversible error. *Cantu v. Comm'n for Lawyer Discipline*, ___ S.W.3d ___ (Tex. App.—Corpus Christi 2018, pet. granted) (mem. op.). In reaching this conclusion, the court of appeals relied heavily on *Joachim v. Chambers*, 815 S.W.2d 234 (Tex. 1991), in which this Court disapproved of the admission of expert testimony by a judge. *Cantu*, ___ S.W.3d at ___.

In this Court, the CLD contends that *Joachim* does not require exclusion of Judge Isgur's testimony. At the outset, the CLD argues that Cantu did not specifically invoke *Joachim* in the trial court and so failed to preserve the argument. But Cantu "was not required . . . at trial to rely on precisely the same case law . . . [the court of appeals found] persuasive." *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 896 (Tex. 2018). Among his laundry list of objections to Judge Isgur's testimony, Cantu complained that it was improper expert testimony by a judge,

3

that "the jury is supposed to hear what happened," and, most importantly, that it is "not for the judge to tell them how to vote." This line of argument is very similar to the concerns about judicial testimony animating *Joachim*. *See* 815 S.W.2d at 237. Cantu's trial-court arguments expressed the basic rationale for the objection without citing the case law. This does not prevent him from relying on the case law on appeal. "We do not consider *issues* that were not raised in the courts below, but parties are free to construct new *arguments* in support of issues properly before the Court." *Greene v. Farmers Ins. Exchange*, 446 S.W.3d 761, 764 n.4 (Tex. 2014).

Turning to the merits, we agree with the CLD that *Joachim* does not require exclusion of Judge Isgur's testimony. *Joachim* was a lawyer-malpractice case. The defense argued that the plaintiffs' damages were caused not by the lawyer's mistakes but by the actions of Judge Godard, the presiding judge in the underlying matter. The defense called as an expert witness another judge, Judge Blanton, who was not involved in the underlying proceeding. Judge Blanton testified about Judge Godard's handling of docket sheet entries. The plaintiffs sought mandamus relief to prohibit the court in the malpractice case from allowing Judge Blanton's testimony at trial. *Joachim*, 815 S.W.2d at 235–37.

This Court held that, in the circumstances presented, permitting Judge Blanton's expert testimony was an abuse of discretion. The Court reasoned as follows. Generally, a judge is competent to testify in any trial except one over which he is presiding. *Id.* at 237. However, the testimony of a judge as an expert witness implicates Canon 2 of the Texas Code of Judicial Conduct, which at the time stated, "A Judge Should Avoid Impropriety and the Appearance of

4

Impropriety in All Activities."[1]  *Id.*  The Canon went on to specify that a judge should promote "the integrity and impartiality of the judiciary" and "should not lend the prestige of his or her office to advance the private interests of himself or herself or others."[2]  *Id.*  The Court held that Canon 2 prohibited Judge Blanton's testimony as an expert witness.  The Court stated, "The appearance of a judge as a witness threatens, rather than promotes, public confidence in the integrity and impartiality of the judiciary."  *Id.* at 238 (internal quotation marks omitted).  It further reasoned:

> Although Canon 2 specifically restricts judges only from testifying as character witnesses, the underlying principles may apply to other judicial testimony, especially expert testimony.  A judge who testifies as an expert witness for a private litigant provides more than evidence; the judge also confers the prestige and credibility of judicial office to that litigant's position, just as a judge who testifies to the litigant's character.  Expert witnesses, unlike judges, rarely appear impartial; a party does not ordinarily call an expert whose testimony is unfavorable.  An expert witness is offered to support a party's position, and if the expert is a judge, the jury may mistake that support for an official endorsement.  An expert witness is usually subject to more rigorous interrogation than a character witness.  Thus, the opportunity for strained relations between a judicial witness and a cross-examining attorney bent on discharging his duty to zealously represent his client is perhaps greater when the judge is testifying as an expert than as a character witness.  The danger that the judge will not be able to set aside the memory of the interrogation when the attorney appears before the judge in other cases is at least as real.  Even when there is no actual impropriety, the appearance of impropriety looms.
>
> The risk of such appearance of impropriety extends beyond the particular case in which the judge testifies.  Not only are jurors likely to be influenced in their decision by the testimony of a judge on one party's behalf, they will see a judge appearing to take sides.  The entrance of a judge into the litigation arena in aid of a combatant impacts not only the outcome of that conflict but the very idea of judicial impartiality.

---

[1] The current version of Canon 2 similarly states: "Avoiding Impropriety and the Appearance of Impropriety in All of the Judge's Activities."  TEX. CODE JUD. CONDUCT Canon 2, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. B.

[2] The current version of Canon 2 similarly states that a judge "should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary" and "shall not lend the prestige of judicial office to advance the private interests of the judge or others."  *Id.* Canon 2(A)–(B).

*Id.* at 238–39. While much of *Joachim* speaks in broad principles, its holding was explicitly limited to its facts. *Id.* at 240 ("We hold only that in the circumstances of this case, Canon 2 prohibits defendants from calling Judge Blanton as an expert witness.").

Applying *Joachim* and its reasoning to this case, we conclude that the trial court did not err by admitting Judge Isgur's testimony. In *Joachim* itself, this Court acknowledged that judges generally are competent to testify in any trial except one over which they are presiding. *Id.* at 237. The Court went on to explain why, in the circumstances presented, the judicial testimony should have been excluded. In so doing, the Court did not announce a broad and general rule against courtroom testimony by judges. *See id.* at 239 ("We do not hold that [these standards of judicial conduct] prohibit judges from ever testifying in court."). To impose such a rule in attorney-disciplinary cases would be particularly ill-advised. In this case, as in others, the judge is the complainant who filed the grievance against the lawyer. Disallowing testimony from judges in such cases would place judge-initiated grievances at an artificial disadvantage relative to other grievances in which the complainant may freely testify. In this instance, the difficulty the CLD would have faced without the initiating complainant as a witness was especially acute because Cantu's counsel made it clear that if Judge Isgur *did not* testify, he would portray that failure to appear as a weakness in the case against Cantu:

> To the extent that Judge Isgur is not going to be here, we're going to talk about it. We think that's relevant. He is the complainant in this case. He is the one that filed the original grievance, and to try to say that that's somehow not relevant, huh-uh. We're going to talk about him not being here. We think it's relevant, highly relevant, goes to show his bias or prejudice, I guess I should say, against my client. And I think that's extremely relevant. Other than that, I'm not going to talk about anybody else. I'm not going to say what testimony those witnesses would have. I'm not going to say, If Judge Isgur was here, he would tell you X, Y and Z. I'm going to say Judge Isgur ain't here, and he filed a complaint.

6

Thus, whereas *Joachim* sought to protect the integrity of the judiciary by limiting judicial expert testimony, in Cantu's case, excluding judicial testimony could have had the opposite effect by suggesting to the jury, at Cantu's urging, that judges do not stand behind their accusations.

The possibility of judicial testimony in attorney-discipline proceedings is envisioned by the Texas and federal codes of conduct for judges. Judge Isgur is a federal judge subject to the Code of Conduct for United States Judges. Canon 3 of that code requires a judge to perform his duties "fairly, impartially and diligently." CODE OF CONDUCT FOR U.S. JUDGES Canon 3. Canon 3(B)(6) provides: "A judge should take appropriate action upon receipt of reliable information indicating the likelihood . . . that a lawyer violated applicable rules of professional conduct." *Id.* Canon 3(B)(6). The commentary to this section states: "Appropriate action may include . . . reporting the conduct to the appropriate authorities . . . . Appropriate action may also include responding to a subpoena to testify or otherwise cooperating with or participating in judicial or lawyer disciplinary proceedings; a judge should be candid and honest with disciplinary authorities." *Id.* Canon 3(B)(6) cmt. The ethics rules for federal judges thus affirmatively encourage the reporting of attorney misconduct and the providing of testimony in disciplinary proceedings. Needless to say, nothing in the federal judicial canons endorses the kind of judicial expert testimony for private litigants of which *Joachim* disapproved.

The Texas rules of judicial conduct are consistent with these federal standards. Texas Code of Judicial Conduct Canon 3(D)(2) states:

> A judge who receives information clearly establishing that a lawyer has committed a violation of the Texas Disciplinary Rules of Professional Conduct should take appropriate action. A judge having knowledge that a lawyer had committed a violation of the Texas Disciplinary Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a

7

> lawyer in other respects shall inform the Office of the General Counsel of the State Bar of Texas or take other appropriate action.

TEX. CODE JUD. CONDUCT Canon 3(D)(2). The obligation to report attorney misconduct applied doubly to Judge Isgur, who is not only a judge but a licensed Texas attorney. Under Texas Disciplinary Rule of Professional Conduct 8.03(a), "a lawyer having knowledge that another lawyer has committed a violation of applicable rules of professional conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate disciplinary authority." TEX. DISCIPLINARY RULES OF PROF'L CONDUCT R. 8.03(a). Judge Isgur correctly testified that he sent his Opinion to the State Bar because, as an attorney, "[he] was mandated to do it by the State Bar of Texas."

These standards of conduct for lawyers and judges reporting attorney misconduct place this case in stark contrast to *Joachim*. While *Joachim* recognized several reasons why judicial expert testimony may often be inappropriate, in attorney disciplinary proceedings the applicable ethical guidelines suggest that testimony by a judge may be not just appropriate but required. It is no surprise that judges in fact do testify with some regularity in disciplinary proceedings. *See, e.g.*, *Hamlett v. Comm'n for Lawyer Discipline*, 538 S.W.3d 179, 182 n.3 (Tex. App.—Amarillo 2017, no pet.) (per curiam); *Olsen v. Comm'n for Lawyer Discipline*, 347 S.W.3d 876, 889 (Tex. App.—Dallas 2011, pet. denied); *McIntyre v. Comm'n for Lawyer Discipline*, 169 S.W.3d 803, 812 (Tex. App.—Dallas 2005, pet. denied); *Hawkins v. Comm'n for Lawyer Discipline*, 988 S.W.2d 927, 938 (Tex. App.—El Paso 1999, pet. denied); *Cohn v. Comm'n for Lawyer Discipline*, 979 S.W.2d 694, 698 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

*Joachim* is further distinguishable because, unlike Judge Isgur, the judge in *Joachim* was not a participant in the prior judicial proceedings that formed the factual core of the case. In

8

*Joachim*, Judge Blanton offered his expert opinion on what happened in the prior case in which he was not involved. 815 S.W.2d. at 235–36. Judge Isgur, by contrast, witnessed Cantu's misconduct and initiated the grievance process. His testimony—as a witness with personal knowledge of the underlying bankruptcy proceedings—was important in explaining to the jury the underlying facts that led to the grievance action. While Cantu argues that other witnesses could have explained the proceeding, including the bankruptcy trustee, the posture of this case was such that Isgur's *failure* to testify would have handicapped the presentation of the underlying facts and confused the jury as to why a critical participant was not present. As the court of appeals noted, Judge Isgur's "testimony was crucial to key issues in the case as pleaded by the Commission and as submitted to the jury." *Cantu*, ___ S.W.3d at ___. The trial court did not err in admitting it.

The court of appeals reasoned that Judge Isgur's testimony "primarily constituted expert opinion." *Id.* at ___. This conclusion led the court to conclude that the testimony must be excluded under *Joachim*. We do not agree. First, *Joachim* recognizes that in some circumstances a judge may testify, even as an expert. 815 S.W.2d at 239. Second, we do not agree with the court of appeals that Judge Isgur's testimony was primarily expert testimony. *Joachim* acknowledges that "a judge must, like anyone else, testify to relevant facts within his personal knowledge when summoned to do so." *Id.* Judge Isgur did exactly that. He gave the jury his background and a general description of his job as a bankruptcy judge. He explained his dealings with Cantu and the circumstances in which he prepared his Opinion. He explained that he found Cantu had "displayed a pattern of omission, obfuscation and noncompliance," and that Cantu had given false oaths, concealed and transferred assets that belonged to the bankruptcy estate, and refused to comply with court orders. Judge Isgur testified that Cantu had failed to keep adequate records and

9

had withheld information from the trustee. He testified that "Cantu's actions were the most litigious that I've ever seen in an individual bankruptcy case," and that these actions drove up the expenses of the case. *Id.* at 103. He explained that he forwarded his opinion to the State Bar. This testimony was largely a recounting of events Judge Isgur personally observed and of his factual findings. Testimony is deemed expert testimony "when the main substance of the witness's testimony is based on application of the witness's specialized knowledge, skill, experience, training, or education." *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 851 (Tex. 2011). Here, the main substance of the testimony was based on Judge Isgur's personal knowledge of Cantu's conduct in the bankruptcy proceeding. Judge Isgur did not purport to give any opinions on whether Cantu committed violations of Texas ethical standards. Judge Isgur is certainly in possession of much expert knowledge, but "not all witnesses who are experts necessarily testify as experts." *Id.* at 850. While we agree with the court of appeals that "the judge was presented not as a typical fact witness," *Cantu*, ___ S.W.3d at ___, we do not agree that he primarily testified as an expert witness.

The court of appeals also concluded that Judge Isgur gave character witness testimony. Texas Code of Judicial Conduct Canon 2(B) provides, "A judge shall not testify voluntarily as a character witness." TEX. CODE JUD. CONDUCT Canon 2(B). The court of appeals concluded that Judge Isgur had given character witness testimony because he testified that he based his thousands of decisions in part on the credibility of witnesses before him, because he testified as to specific acts of professional misconduct, and because he had instructed Cantu to stop "doing frivolous things." We do not agree that this testimony amounted to character witness testimony. Character witness testimony is testimony in the form of an opinion about a person's general character. *See*

10

TEX. R. EVID. 405(a)(1), 608(a); *In re Jimenez*, 841 S.W.2d 572, 574 (Tex. Spec. Ct. Rev. 1992) ("Judge Jimenez testified as a character witness that Heim had a bad reputation for truthfulness and veracity . . . ."); JEFF BROWN & REECE RONDON, TEXAS RULES OF EVIDENCE HANDBOOK 236–37 (2019) ("The definition of 'character' as the term is used in Rules 404 and 405 . . . is a generalized personality trait or a propensity to behave in a certain manner."). Judge Isgur did not testify as to Cantu's character when he confirmed that he based his decisions as a judge in part on the credibility of witnesses—testimony elicited by Cantu's counsel. Nor did the judge testify as a character witness when he testified that he found specific acts of misconduct or when he testified that he instructed Cantu to stop doing frivolous things. None of these comments were in the nature of testimony about Cantu's general character or reputation.

The CLD also argues that the trial court did not err in admitting Judge Isgur's written Opinion denying Cantu's discharge in bankruptcy. The court of appeals devoted a single footnote to this issue. We are unable to discern whether the court of appeals viewed the admission of the Opinion as an independent basis for reversal.[3] If it did, we disagree. Cantu argues that the Opinion was inadmissible hearsay. But the CLD is correct that the Opinion was admissible under the hearsay exception for public records found in Rule of Evidence 803(8). This exception applies to "[a] record or statement of a public office if . . . it sets out (i) the office's activities; (ii) a matter observed while under a legal duty to report . . . or (iii) in a civil case . . . factual findings from a

---

[3] The court of appeals noted Cantu's separate argument that the trial court erred in admitting Judge Isgur's Opinion. It stated, "We need not further address this issue here," but then noted that the Opinion "'could be . . . a form of judicial influence no less proscribed than judicial testimony.'" *Cantu*, ___ S.W.3d at ___ n.4 (quoting *In re M.S.*, 115 S.W.3d 534, 538 (Tex. 2003)).

legally authorized investigation . . . ." TEX. R. EVID. 803(8).[4] The Opinion sets out Judge Isgur's legally authorized factual findings. As a court-generated document, it can qualify as a public record. *See* JEFF BROWN & REECE RONDON, TEXAS RULES OF EVIDENCE HANDBOOK 906 (2019) (stating that examples of Rule 803(8) public records include "court-ordered judgments and sentences kept in the court's files"); *see also Estate of Wilson v. Wilson*, 587 S.W.2d 674, 675 (Tex. 1979) (per curiam) (holding that prior judgment containing factual finding of undue influence was admissible as a public record under prior statute permitting admission of government records).

Cantu argues that the Opinion was unduly prejudicial under Rule 403, which provides that relevant evidence may be excluded if its probative value is substantially outweighed by certain risks, including the danger of "unfair prejudice, confusing the issues, [or] misleading the jury." TEX. R. EVID. 403. The CLD argues that the Opinion was properly admitted because Cantu "opened the door" to its admission by asking one of his experts about the Opinion. "Evidence that is otherwise inadmissible may become admissible when a party opens the door . . . . by leaving a false impression with the jury that invites the other side to respond." *Hayden v. State*, 296 S.W.3d 549, 554 (Tex. Crim. App. 2009); *see also Sw. Elec. Power Co. v. Burlington N. R.R.*, 966 S.W.2d 467, 473 (Tex. 1998) ("A party on appeal should not be heard to complain of the admission of improper evidence by the other side, when he . . . introduced the same evidence or evidence of a similar character." (quoting *McInnes v. Yamaha Motor Corp.*, 673 S.W.2d 185, 188 (Tex. 1984))).

---

[4] Rule 803(8) separately requires that "the opponent fails to demonstrate that the source of the information or other circumstances indicate a lack of trustworthiness." TEX. R. EVID. 803(8)(B). Cantu failed to make such a showing.

On many occasions, one of Cantu's experts testified that there was no evidence of misconduct "other than Judge Isgur's opinion." We agree with the Commission that, by repeatedly referencing the Opinion—over 30 times—and repeatedly claiming there was no evidence of misconduct other than Judge Isgur's Opinion, the expert's testimony suggested that the Opinion was somehow conclusory or perfunctory, or lacking in factual foundation. Permitting the jury to see the relevant, detailed findings of the Opinion fairly showed the jury that the Opinion included findings of specific acts of misconduct and was consistent with the testimony of the judge and the trustee. The Opinion was a fair response to Cantu's evidence and was properly admitted under the circumstances. It was not unfairly prejudicial or misleading. Further, any potential for unfair prejudice arising from the admission of the Opinion was minimized because it was heavily redacted to include only those portions explored by the live witnesses, who were subject to cross-examination. The trial court did not err in admitting the Opinion over a Rule 403 objection.

In summary, the trial court did not abuse its discretion by permitting Judge Isgur to testify or by admitting Judge Isgur's redacted Opinion. The court of appeals erred by holding otherwise. Cantu raised many other issues in the court of appeals that were not reached by that court.[5] Accordingly, without hearing oral argument, we grant the petition for review, reverse the judgment of the court of appeals, and remand the case to that court for further proceedings consistent with this opinion. *See* TEX. R. APP. P. 59.1, 60.2(d).

**OPINION DELIVERED:** October 25, 2019

---

[5] Cantu raises several points in his cross-petition that were not reached by the court of appeals. We deny the cross-petition without regard to the merits.

13