Sherin THAWER, Appellant

v.

COMMISSION FOR LAWYER DISCIPLINE, Appellee

No. 05–15–00984–CV

Court of Appeals of Texas, Dallas.

Opinion Filed March 6, 2017.

178

James Nathan Overstreet, J. Nathan Overstreet & Assoc., P.C., 8711 Highway 6 N Ste 230, Houston TX 77095-2477, for Appellant.

Cynthia W. Hamilton, Senior Appellate Counsel, Office of the Chief, Disciplinary Counsel, P.O. Box 12487, Austin TX 78711-2487, Susan M. Farris, State Bar of Texas, 14651 Dallas Parkway, Suite 925, Dallas TX 75254, for Appellee.

Before Justices Fillmore, Brown, and Richter[1]

## OPINION

Opinion by Justice Richter

The trial court rendered judgment suspending appellant Sherin Thawer from the practice of law. Because we conclude the trial court did not abuse its discretion in admitting evidence, the evidence was sufficient to support the judgment, and the judgment was not excessive, we affirm.

1. The Hon. Martin Richter, Justice, Court of Appeals, Fifth District of Texas at Dallas, Re-

## BACKGROUND

The State Bar of Texas Commission for Lawyer Discipline (the "Commission") brought this disciplinary action against Thawer, an attorney, alleging that she committed professional misconduct. The Commission alleged that Thawer violated the Texas Disciplinary Rules of Professional Conduct by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, and by violating a November 5, 2013 order of the United States Department of Justice, Executive Office for Immigration Review, United States Immigration Court (the "Immigration Court Order").

The Immigration Court Order was the result of a disciplinary proceeding against Thawer initiated in 2012 by the Disciplinary Counsel, United States Citizenship and Immigration Services, Department of Homeland Security. In an order dated July 31, 2013, Thawer was suspended from practice before "The Board of Immigration Appeals and the Immigration Courts" as well as "United States Citizenship and Immigration Services" ("USCIS") until July 26, 2014, "with conditional reinstatement restrictions."

Thawer appealed the July 31, 2013 order. Her appeal was dismissed on November 5, 2013, in the Immigration Court Order. The Immigration Court Order also provided:

FURTHER ORDER: The Immigration Judge's decision suspending the respondent from practice before the Immigration Courts, Board of Immigration Appeals, and DHS [Department of Homeland Security], for one year, remains in effect.

tired, sitting by assignment.

FURTHER ORDER: The respondent's suspension is effective 15 days from this date. 8 C.F.R. § 1003.106(c)(2013).

FURTHER ORDER: The respondent is directed to promptly notify, in writing, any clients with cases currently pending before the Board, the Immigration Courts, or the DHS that the respondent has been suspended from practicing before these bodies.

In this suit, the Commission alleges Thawer violated the Immigration Court Order and engaged in conduct violating rules 8.04(a)(3), 8.04(a)(7), and 8.04(a)(11), Texas Disciplinary Rules of Professional Conduct.[2] Those rules provide:

8.04 Misconduct

(a) A lawyer shall not:

. . .

(3) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; . . .

(7) violate any disciplinary or disability order or judgment; . . .

(11) engage in the practice of law when . . . the lawyer's right to practice has been suspended or terminated . . . .

The case proceeded to a bench trial. The Commission offered evidence that in December, 2013, several weeks after the Immigration Court Order became effective, Thawer appeared at the USCIS Dallas Immigration Field Office for a hearing regarding her clients Manan Sapkota and Emma Sharma. Thawer instructed Kiran Talluri, a newly-hired associate, to meet her there. Parker Jones, an immigration services officer, conducted the hearing. Priscilla Dobbins was the acting supervisor at the field office on the date of the hearing. Sapkota, Sharma, Talluri, Jones, and Dobbins testified at trial about the hearing.

Sharma testified she hired Thawer in August 2013 to represent her to obtain her green card. A hearing on Sharma's application was scheduled at the immigration office in December. Thawer arrived late. Before the hearing commenced, "somebody came and took [Thawer] away." Sharma did not know who took Thawer away or why, and Thawer did not return. Sharma said at the time of the hearing she did not know Thawer had been suspended from practicing immigration law. Thawer never sent Sharma written notice of her suspension; Sharma did not learn of it until she was contacted by the State Bar in the year before trial. Sharma testified that although Talluri was present at the hearing, "I didn't know if he was my lawyer or not."

Sapkota confirmed that he and Sharma, his then-fiancé, hired Thawer as their attorney to obtain Sharma's green card. They paid Thawer a fee of $1500. When he and Sharma arrived at the immigration office for the December hearing, Thawer was not yet there. They met Talluri, who instructed them to wait for Thawer. They had not met Talluri before, did not know he was a lawyer, and had not discussed their case with him. Sapkota testified that "I'm pretty confused at that time what he was doing out there." Thawer arrived, but "for some reason she was not allowed to come in over there to that—to that office." Sapkota had "no idea" why. He did not know Thawer had been suspended from practicing immigration law. She did not send him written notice; he learned of her suspension only a few months before trial.

Talluri testified that he was employed by Thawer for three or four weeks in

2. Tex. Disciplinary Rules Prof'l Conduct Rs. 8.04(a)(3), 8.04(a)(7), & 8.04(a)(11), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2013 & Supp. 2016) (Tex. State Bar R. art. X, § 9).

December 2013 and January 2014. Thawer called him in mid–December saying "she had an opportunity for me to go to the immigration court the next morning, show up at eight o'clock." He understood that his "role would be passive, that I would learn about how immigration hearings worked." He had not reviewed the file before that day and had not discussed the case with the clients. When he arrived at the immigration office, Thawer was not there. He introduced himself to Sapkota and Sharma and told them "[t]hat we're here waiting for [Thawer]. I'm just here to sort of shadow her, figure out how this is done." The case was called, but Talluri informed the immigration services officer that Thawer had not yet arrived, and she was the lawyer representing Sapkota and Sharma. When Thawer arrived, they "all went into a room in the back," but before the hearing began, Thawer "got pulled out of the room," and he was left to represent the clients.

Talluri explained that at the time of the hearing, he did not know that Thawer had been suspended from practicing immigration law. That morning he did not hear Thawer tell anyone that she had been suspended. His understanding was that the clients were also "pretty clueless" about Thawer's suspension. He did not know at the time he was hired that Thawer had been suspended; he found out after the hearing when he returned to Thawer's office and was told by "the other employees."

Jones testified that when he called the case to begin the hearing, he was told that Sapkota and Sharma were still waiting for their attorney. Thawer then arrived, and Jones took both attorneys and the clients back to his office. Jones asked Thawer why two attorneys were present. Thawer "stated that the other individual, Mr. Talluri, was going to be observing the interview." Thawer did not tell Jones that she was suspended from practicing immigration law, and he did not know of her suspension. Jones then received a phone call from another immigration officer, who asked Jones to meet him in the hallway. The officer informed Jones that "there was an issue with one of the attorneys in my office and that I needed to seek supervision." Jones consulted Dobbins, who advised him that Thawer "was not allowed to be present during the interview [3] process and that she would escort her out." After Dobbins escorted Thawer out, and Talluri's credentials had been verified, Jones proceeded with the hearing.

Dobbins testified that she knew of Thawer's suspension before the day of the hearing. Dobbins escorted Thawer and Talluri from Jones's office. While Talluri waited outside, Dobbins spoke to Thawer briefly in another room. She explained that Thawer "was prohibited from serving or being in the office as a representative." Thawer told Dobbins "she was there to show her associate the ropes." After this short conversation Dobbins escorted Thawer to the lobby. She then confirmed that Talluri was licensed by the State Bar, and permitted him to return to the hearing with Sapkota, Sharma, and Jones.

At the bench trial, Thawer's counsel cross-examined each of these witnesses. Talluri testified on cross-examination that he was licensed to practice law at the time of Sharma's immigration hearing, and signed the immigration office's form stating he was representing Sapkota and Sharma. He was not required to take any

---

**3.** The witnesses referred to the proceeding interchangeably as a "hearing" and an "inter- view."

active role in the hearing. Sapkota and Sharma both testified that they chose to proceed with the hearing without Thawer, and were successful in obtaining Sharma's green card.

The Commission also pleaded and offered evidence that in December 2013, Thawer appeared on her weekly radio show to answer callers' immigration questions. John Hammond, one of the owners of a company called FunAsiA, testified at trial. Hammond explained that Thawer's show was broadcast on a radio station operated by FunAsiA. In December 2013, Hammond received information "from multiple sources" that Thawer "is not allowed to practice immigration anymore." He contacted Thawer, who "told me that she's getting it reversed." On December 17 and 19, Thawer sent text messages to Hammond in response to his inquiries. Thawer assured Hammond that "[t]he hearings and motions are all done. We won. We are waiting on the order." Hammond replied, requesting a copy of the order once she received it. Hammond subsequently asked Thawer "many, many, many times" for a copy of the order, but he never received one. Thawer's response was that "it's all been taken care of" and that he did not need to worry. Thawer also sent him the State Bar's approval of her advertising, implying that she could not have received the approval if her suspension had not been reversed. He consulted with other attorneys, however, and learned that the approval had nothing to do with her suspension from the practice of immigration law.

The Commission also offered evidence that Thawer signed written contracts with clients after November 20, 2013 to provide representation on immigration matters without disclosing her suspension from

practice before the Immigration Courts, the Board of Immigration Appeals, and the DHS. The Commission also called Irene Ishak, an attorney formerly employed by Thawer. Ishak testified that after Thawer's suspension became effective, Thawer signed Ishak's name without permission on correspondence and on immigration documents including a G–28 notice of appearance of counsel form.

The trial court rendered a judgment of partially probated suspension. The trial court's judgment suspends Thawer "from the practice of law for a period of twenty-four months, commencing May 20, 2015, and ending May 19, 2017, with the initial twelve months being active and commencing May 20, 2015 and ending May 19, 2016, and the remaining twelve months probated from May 20, 2016, through May 19, 2017," on nine specific conditions. The trial court also signed findings of fact and conclusions of law. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

Thawer asserts six issues.[4] She argues the trial court erred by finding that she violated the Immigration Court Order. She contends that neither her appearance at the December 17, 2013 hearing nor her participation in the December 21, 2013 radio show constituted the "practice" of law prohibited by the Immigration Court Order. She argues the trial court erred by admitting evidence outside the pleadings and not disclosed in discovery. She challenges the sufficiency of the evidence to support the trial court's finding that she engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, and she argues that the trial court's order of active suspension was excessive.

4. Thawer's issues are numbered differently throughout her appellant's brief. This opinion

follows the numbering used in the brief's table of contents.

In a disciplinary action against an attorney, the Commission must prove its allegations by a preponderance of the evidence. TEX. RULES DISCIPLINARY P. R. 3.08.C, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A–1 (West 2013 & Supp. 2016). When the appellant is challenging the legal sufficiency of the evidence to support a finding on which she did not have the burden of proof at trial, she must demonstrate on appeal that no evidence exists to support the adverse finding. *McIntyre v. Comm'n for Lawyer Discipline*, 169 S.W.3d 803, 806 (Tex. App.–Dallas 2005, pet. denied). When reviewing a "no evidence" point, we determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

When challenging the factual sufficiency of the evidence supporting an adverse finding on which the appealing party did not have the burden of proof, the appellant must demonstrate there is insufficient evidence to support the adverse finding. *James v. Comm'n for Lawyer Discipline*, 310 S.W.3d 598, 610 (Tex. App.–Dallas 2010, no pet.). In conducting a factual sufficiency review, we consider and weigh all the evidence in support of and contrary to the finding, and will set aside a finding only if it is so contrary to the weight of the evidence as to be clearly wrong and manifestly unjust. *McIntyre*, 169 S.W.3d at 806.

In making this review, we are not a fact finder. *Id.* We do not pass upon the credibility of the witnesses or substitute our judgment for that of the fact finder, even if a different answer could be reached upon review of the evidence. *Id.* The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Id.*

We review the trial court's conclusions of law de novo to determine whether they are correct. *Id.* at 806–07. Conclusions of law must be upheld on appeal if any legal theory supported by the evidence sustains the judgment, and will be reversed only if the conclusions are erroneous as a matter of law. *Id.* at 807.

■ We review the sanctions imposed on an attorney for professional misconduct for abuse of discretion. *Id.* A court abuses its discretion only when it acts in an unreasonable and arbitrary manner, or when it acts without reference to any guiding principles. *Id.*

We also review the trial court's rulings on the admission or exclusion of evidence for abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005) (per curiam). To reverse an erroneous evidentiary ruling, an appellant must both establish error and show that the error probably caused an improper judgment. TEX. R. APP. P. 44.1; *McIntyre v. Comm'n for Lawyer Discipline*, 247 S.W.3d 434, 442 (Tex. App.–Dallas 2008, pet. denied).

## DISCUSSION

### A. Admission of Evidence

We first address Thawer's fourth issue complaining of the erroneous admission of evidence. Thawer asserts three errors: (1) an undisclosed witness was permitted to testify; (2) the trial court admitted evidence that was outside the scope of the pleadings; and (3) the trial court admitted exhibits that were hearsay and were not properly authenticated as business records.

### 1. Undisclosed witness

■ The trial court permitted Caitlyn Miller, a disciplinary attorney for USCIS and DHS, to testify at trial. Miller was not

identified by name in the Commission's disclosure responses.

In disciplinary actions, discovery is to be conducted "as in civil cases generally." TEX. RULES DISCIPLINARY P. R. 3.05. Rule 193.6, Texas Rules of Civil Procedure, provides that "[a] party who fails to make, amend, or supplement a discovery response in a timely manner may not ... offer the testimony of a witness (other than a named party) who was not timely identified," unless the court finds (1) good cause for the failure, and (2) lack of unfair surprise or unfair prejudice to the other party. The party seeking to call the witness bears the burden of proving both good cause and lack of unfair surprise or unfair prejudice. TEX. R. CIV. P. 193.6(b).

In response to Thawer's objection, counsel for the Commission argued that it identified Catherine O'Connell, another disciplinary attorney for USCIS and DHS, as a person with knowledge of relevant facts. O'Connell is also identified as one of the complainants in the Commission's operative petition. Counsel for the Commission explained that its disclosures identified O'Connell as well as "other disciplinary counsel" as having "knowledge of the order suspending respondent from practice." Counsel explained that after the Commission made its disclosures it discovered that O'Connell had a conflict on the trial date and could not appear, so Miller, another disciplinary counsel, was present to testify in her place. The trial court then overruled Thawer's objection.

■ The Commission argues that Miller was identified by title ("other disciplinary counsel"), although not by name. Thawer did not object to this identification or seek clarification of the Commission's disclo-

sures. The Commission argues that O'Connell's unavailability was good cause for the failure to supplement the disclosures, and no unfair surprise or unfair prejudice resulted because Miller "merely provided the same type of testimony that the unavailable named witness would have provided." No additional preparation for the substitute witness would have been necessary for Thawer to prepare her defense. The Commission also argues that any error in admitting Miller's testimony was harmless because it was cumulative; "nearly all" of Miller's direct testimony reflected information included in three exhibits admitted into evidence without objection.[5] The erroneous admission of evidence is harmless if it is merely cumulative. *Strong v. Strong*, 350 S.W.3d 759, 764 (Tex. App.–Dallas 2011, pet. denied). On this record, we conclude the trial court did not abuse its discretion by determining that the Commission met its burden of establishing an exception under Rule 193.6(b).

### 2. Scope of the pleadings

■ Thawer next complains the trial court erred by admitting the Commission's exhibits 6, 7, and 8 into evidence. Exhibits 6, 7, and 8 are retainer agreements Thawer signed in December 2013 to provide representation in immigration matters to clients other than Sapkota and Sharma. These agreements do not include any statement about Thawer's suspension. Thawer contends these exhibits are "outside the scope of either pled cause of action." Without citing authority, Thawer argues the Commission's petition "should, at a minimum, include the names of the clients which its claims the attorney wronged." She argues that the Commission's pleading is limited to her failure to notify Sapkota and Sharma.

---

**5.** Petitioner's exhibits 1, 2, and 12, admitted without objection, are certified copies of orders and pleadings relating to Thawer from the attorney discipline file of the Board of Immigration Appeals.

■ A trial court's judgment must conform to the pleadings. Tex. R. Civ. P. 301. The rules of disciplinary procedure set forth requirements for a disciplinary petition filed by the Commission. Tex. Rules Disciplinary P.R. 3.01. In relevant part, rule 3.01 requires the petition to contain "[a] description of the acts and conduct that gave rise to the alleged Professional Misconduct in detail sufficient to give fair notice to Respondent of the claims made, which factual allegations may be grouped in one or more counts ..." and "[a] listing of the specific rules of the Texas Disciplinary Rules of Professional Conduct allegedly violated by the acts or conduct, or other grounds for seeking Sanctions." Tex. Rules Disciplinary P.R. 3.01.D, E. "A petition is sufficient if a cause of action or defense may be reasonably inferred from what is specifically stated." *Favaloro v. Comm'n for Lawyer Discipline*, 13 S.W.3d 831, 837–38 (Tex. App.–Dallas 2000, no pet.).

The Commission's petition quoted the applicable provision of the Immigration Court Order directing Thawer to notify clients in writing regarding her suspension. The Commission also alleged that Thawer violated Rule 8.04(a)(7). *See* Tex. Disciplinary Rules Prof'l Conduct R. 8.04(a)(7) (lawyer shall not violate any disciplinary order or judgment). The Commission was not required to plead all of the evidence that might be introduced at trial. *See McIntyre*, 169 S.W.3d at 808. We conclude that the petition gave fair notice of the Commission's allegation that Thawer violated the Immigration Court Order by failing to promptly notify clients in writing of her suspension, and the pleadings supported the trial court's judgment. *See id.*

We also conclude that any error in admitting the retainer agreements did not cause the rendition of an improper judgment because the evidence was cumulative.

*See* Tex. R. App. P. 44.1(a)(1) (no judgment reversed for error of law unless error probably caused rendition of improper judgment); *Strong*, 350 S.W.3d at 764 (erroneous admission of evidence harmless if merely cumulative). Both Sapkota and Sharma testified that Thawer never told them, either verbally or in writing, that she had been suspended from practice before the Immigration Courts. This evidence supported the trial court's conclusion that Thawer violated Rule 8.04(a)(7). The three agreements were evidence of similar violations.

We conclude the trial court did not abuse its discretion by overruling Thawer's objection that Exhibits 6, 7, and 8 were outside the scope of the Commission's pleadings.

### 3. Hearsay

Thawer also contends the trial court abused its discretion by admitting the Commission's Exhibits 5, 6, 7, and 8 into evidence because the Commission failed to establish the elements of the business records exception to the hearsay rule. *See* Tex. R. Evid. 803(6). As noted above, Exhibits 6, 7, and 8 were retainer agreements between Thawer and three clients. Exhibit 5 is a chart reflecting fees paid by clients of Thawer's firm between November 1, 2013, and July 12, 2014. In the chart's column entitled "Type," most of the entries state "Immigration."

The Commission contends Rule 803(6) does not apply to Exhibits 6, 7, and 8 because "the relevant portions of the documents in question are not hearsay." The Commission identifies the "relevant portions" of the exhibits as (1) the date, (2) the description of services to be provided under the contract, and (3) Thawer's signature on each contract, all of which were added to the contracts by Thawer. The Commission contends these "statements" by Thawer are non-hearsay admissions by

a party opponent under Rule 801(e)(2). *See* Tex. R. Evid. 801(e)(2) ("An Opposing Party's Statement"). Even if the Commission's argument is incorrect, we have already concluded that any error in the trial court's admission of the cumulative evidence reflected in these exhibits did not cause the rendition of an improper judgment. *See Strong,* 350 S.W.3d at 764.

 The Commission also contends that Exhibit 5 was properly admitted into evidence despite Thawer's objection that the sponsoring witness, Heidi Thresher Amos, admitted she was not the current "custodian" of the exhibit. Amos testified she worked for Thawer from April 2013 to August 2014, first as a receptionist and then as a legal assistant. She identified Exhibit 5 as "a monthly tally of consultation fees obtained from potential clients throughout each month" kept by Thawer's firm. Amos testified that she entered the information on the logs. She stated that the entries accurately showed consultation fees Thawer accepted from meeting with potential clients. On voir dire examination by Thawer's counsel, Amos testified she printed out the logs when she was Thawer's employee, and was authorized to do so. She did not, however, take the logs with her when she left Thawer's employ, and she testified that the logs were the law firm's records, not her own. She answered "no" to the question, "you're not a custodian of ... these records at this time, are you?" Rule 803(6), however, requires the testimony "of the custodian *or another qualified witness.*" Tex. R. Evid. 803(6)(D) (emphasis added). The witness must show that:

(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B) the record was kept in the course of a regularly conducted business activity; [and]

(C) making the record was a regular practice of that activity . . . .

Tex. R. Evid. 808(6)(A)–(C). Rule 803(6) does not require the testimony of the current custodian of records if a witness who prepared the record or has knowledge of how the record was prepared can testify to the matters specified in subsections (A), (B), and (C). *See In re E.A.K.,* 192 S.W.3d 133, 142 (Tex. App.–Houston [14th Dist.] 2006, pet. denied) ("Rule 803(6) does not require that the witness laying the predicate for admission of a document be the creator of the document or even an employee of the same company as the creator. The witness does not even have to have personal knowledge of the information recorded in the document but need only have knowledge of how the records were prepared." [Citations omitted] ). The Commission established that Amos was a "qualified witness" under Rule 803(6). *See, e.g., Rodriguez v. Citimortgage, Inc.,* No. 03-10-0093-CV, 2011 WL 182122, at *4 (Tex. App.–Austin Jan. 6, 2011, no pet.) (mem. op.) ("To be a 'qualified witness,' the affiant must have personal knowledge of the business's recordkeeping practices or of the facts contained within the business records.").

The trial court did not abuse its discretion in its rulings admitting Miller's testimony and Exhibits 5, 6, 7, and 8 into evidence. *See In re J.P.B.,* 180 S.W.3d at 575. We decide Thawer's fourth issue against her.

**B. Conduct Involving Dishonesty, Fraud, Deceit, or Misrepresentation**

 In her fifth issue Thawer challenges the sufficiency of the evidence to support the trial court's conclusion that she engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of Texas Disciplinary Rule of Professional Conduct 8.04(a)(3). The disciplin-

ary rules define "fraud" to include "conduct having a purpose to deceive and not merely negligent misrepresentation or failure to apprise another of relevant information." TEX. DISCIPLINARY RULES PROF'L CONDUCT terminology.[6] The rules do not define "dishonesty," "deceit," or "misrepresentation." Courts have therefore given those terms their ordinary meanings, and have concluded that they generally mean a "lack of honesty, probity, or integrity in principle," and a "lack of straightforwardness." *Olsen v. Comm'n for Lawyer Discipline*, 347 S.W.3d 876, 882–83 (Tex. App.–Dallas 2011, pet. denied).

The Commission presented evidence that Thawer engaged in conduct lacking honesty or straightforwardness and having a purpose to deceive. *See id.* As detailed above, Thawer appeared at an immigration hearing after she was suspended, without informing her clients, her associate, or the hearing officer of her suspension. She did not represent her clients at the hearing, but only because she was escorted out of the building before the hearing commenced. Further, Thawer represented to Hammond on multiple occasions that her suspension had been reversed and that she had "taken care of" the problem, presenting him with documents approving her advertising as if they were proof of the reversal. We conclude there was legally and factually sufficient evidence to support the trial court's findings and conclusion that Thawer violated Texas Disciplinary Rule of Professional Conduct 8.04(a)(3) by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. We decide Thawer's fifth issue against her.

█ The violation of one disciplinary rule is sufficient to support a finding of professional misconduct. *Cluck v. Comm'n*

*for Lawyer Discipline*, 214 S.W.3d 736, 739 (Tex. App.–Austin 2007, no pet.), *see also* TEX. RULES DISCIPLINARY P.R. 1.06.W.1. (defining "professional misconduct" to include "acts or omissions by an attorney . . . that violate *one or more* of the Texas Disciplinary Rules of Professional Conduct" [emphasis added]). Because Thawer's violation of Rule 8.04(a)(3) was sufficient to support the trial court's judgment, we need not address her first three issues contending that neither her appearance at the field office on December 17, 2013, nor her appearance on the radio show on December 21, 2013, constituted "practice" in violation of the Immigration Court Order and therefore did not constitute violations of Rules 8.04(a)(7) and 8.04(a)(11).

### C. Excessiveness of Sanction

█ In her sixth issue Thawer complains that the trial court's order of active suspension was excessive. She contends:

- "no one was harmed" by the alleged misconduct; there is no evidence that "even one client lost their case";

- she has not been sanctioned by the State Bar of Texas in the past;

- there is no evidence she acted unprofessionally "in the course of the action or in trial";

- she did not lie during the radio show, make misstatements of law or offer unsound legal opinions; and

- she did not defy the Immigration Court's order, but instead hired a new associate and kept competent staff in her office to handle the firm's immigration cases.

█ A trial court has broad discretion to determine the consequences of pro-

---

**6.** The Texas Disciplinary Rules of Professional Conduct contain sections entitled "Preamble: A Lawyer's Responsibilities," "Preamble: Scope," and "Terminology," all preceding Rule 1.01.

fessional misconduct. *See State Bar of Texas v. Kilpatrick*, 874 S.W.2d 656, 659 (Tex. 1994); *Eureste v. Comm'n for Lawyer Discipline*, 76 S.W.3d 184, 202 (Tex. App.– Houston [14th Dist.] 2002, no pet.). The judgment of a trial court in a disciplinary proceeding may be so light, or so heavy, as to constitute an abuse of discretion. *Olsen*, 347 S.W.3d at 888 (citing *Kilpatrick*, 874 S.W.2d at 659). "At the same time, the trial court has broad discretion to determine whether an attorney guilty of professional misconduct should be reprimanded, suspended, or disbarred." *Kilpatrick*, 874 S.W.2d at 659.

■ Rule 3.10 of the Texas Rules of Disciplinary Procedure sets forth factors for trial courts to consider in determining the appropriate sanctions. TEX. RULES DISCIPLINARY P. R. 3.10.A–L. These factors include the nature and degree of the professional misconduct, the seriousness of and circumstances surrounding the misconduct, the loss or damage to clients, the damage to the profession, the assurance that those who seek legal services in the future will be insulated from the type of misconduct found, the profit to the attorney, the avoidance of repetition, the deterrent effect on others, the maintenance of respect for the legal profession, the trial of the case, and other relevant evidence concerning the attorney's personal and professional background. *Kilpatrick*, 874 S.W.2d at 659 (citing TEX. RULES DISCIPLINARY P.R. 3.10). A court is not required to find that every Rule 3.10 factor has been satisfied before ordering a sanction. *See Olsen*, 347 S.W.3d at 889.

In closing argument, counsel for the Commission discussed the Rule 3.10 factors and the evidence relevant to them. The trial court's findings and conclusions focus on Thawer's lack of respect for, and damage to, the legal profession. The evidence supports these findings and conclusions. The trial court heard testimony from numerous witnesses regarding the nature and degree of Thawer's misconduct. In addition, exhibits detailing Thawer's conduct that led to her suspension under the Immigration Court Order were admitted into evidence at trial without objection. The trial court heard Ishak's testimony that Thawer signed Ishak's name without permission on correspondence and on immigration documents. And even if Thawer correctly argues that neither her appearance at the December 2013 hearing nor her participation in the radio show technically constituted the "practice" of law in violation of the Immigration Court Order, the trial court could consider the evidence that Thawer signed contracts with and accepted fees from clients to represent them before the tribunals from which she had been suspended. Both Sharma and Sapkota testified that Thawer did not notify them of her suspension even as they proceeded into a hearing in which Thawer was prohibited from representing them. This failure alone was a clear violation of the Immigration Court Order and supported the trial court's findings and conclusions.

In its findings and conclusions, the trial court found that Thawer made a false statement to Hammond that "she had appealed the Board's suspension and won." The trial court also found that Thawer "misrepresented her professional licensing status" to Hammond, Sapkota, Sharma, "and the two immigration services officers." The trial court concluded:

- Thawer "has shown a lack of respect for the legal profession";
- "A two-year partially probated suspension is necessary to ensure that Respondent's misconduct will not continue"; and
- "A two-year partially probated suspension is necessary to maintain respect for the legal profession."

The evidence supports the trial court's findings and conclusions. The trial court did not abuse its discretion by ordering a partially probated suspension. We decide Thawer's sixth issue against her.

## CONCLUSION

We affirm the trial court's judgment.