**AFFIRMED and Opinion Filed January 8, 2021**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

No. 05-19-00874-CV
_____

**MELINDA MORA, Appellant**
**V.**
**CHARLES WINE AND**
**THE KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellees**

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Trial Court Cause No. CC-16-05690-E**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Partida-Kipness
Opinion by Justice Osborne

Appellant Melinda Mora brought suit against appellees Charles Wine and The Kansas City Southern Railway Company ("KCSR") for injuries she allegedly suffered in an automobile collision at a railroad crossing. The trial court granted KCSR's motion for summary judgment. Mora's claims against Wine, the driver of the car in which she was a passenger, then proceeded to trial before a jury. The jury found that Wine's negligence proximately caused the accident and awarded Mora $25,000 for "medical care in the past." The trial court rendered judgment for Mora on the jury's verdict. In three issues, Mora challenges the summary judgment order,

the trial court's evidentiary rulings, and the sufficiency of the evidence to support the jury's damages award. We affirm the trial court's judgment.

## BACKGROUND

Mora was a passenger in Wine's car on November 17, 2014. As they approached a railroad crossing owned and operated by KCSR, the car in front of them stopped because the crossing's warning lights had come on and the gates had come down. Although Wine applied the brakes, he was not able to stop before colliding with the stopped vehicle.

In interrogatories to Mora, KCSR requested that Mora "[s]tate generally your contention as to how the INCIDENT occurred and identify the acts or omissions of each party that you contend contributed to the INCIDENT." After stating her objections, Mora responded, "Plaintiff refers Defendant to Plaintiff's Original Petition." In her petition, Mora alleged:

> The railroad crossing gate came down suddenly and without warning causing the vehicle in front of CHARLES WINE'S vehicle to stop suddenly, which caused CHARLES WINE to rear-end the vehicle in front of him. Defendant THE KANSAS CITY SOUTHERN RAILWAY COMPANY owned, operated, controlled, maintained and was responsible for the railroad crossing gate and signals. Defendant THE KANSAS CITY SOUTHERN RAILWAY COMPANY negligently operated and maintained the railroad crossing gate.
>
> . . . .
>
> 15. The negligent, careless and reckless acts of [KCSR] consisted of, but are not limited to, failing to properly control, maintain, repair and/or operate the railroad crossing gate.

–2–

KCSR moved for summary judgment on the ground that there was no evidence of a breach of duty regarding the crossing gate, because "there is no evidence that the gate came down 'suddenly' or in any other negligent manner." KSCR also challenged the proximate cause element of Mora's claim, arguing that "even if the crossing gate did come down suddenly, there is no evidence that this acted as a proximate cause of the collision." KSCR explained, "[t]hat is, however the crossing gates came down, they did not prevent the car in front of Plaintiff's car from stopping short of the crossing." The trial court granted KCSR's motion.

In the subsequent trial of Mora's claims against Wine, the jury found that Wine's negligence proximately caused "the occurrence in question." The jury answered "$0.00" to questions asking for amounts that would reasonably compensate Mora for past and future physical pain and mental anguish, past and future physical impairment, and "medical care that in reasonable probability will be needed in the future." The jury found that $25,000 would fairly and reasonably compensate Mora for "medical care in the past." The trial court rendered judgment on the jury's verdict. This appeal followed.

## STANDARDS OF REVIEW

The parties have discussed the applicable standards of review in their briefing. We need not detail them here. In sum, we review the trial court's no-evidence summary judgment order de novo under the same legal sufficiency standard as a directed verdict, and its ruling on the admission or exclusion of evidence for abuse

–3–

of discretion. *See Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013) (summary judgment); *Estate of Finney*, 424 S.W.3d 608, 612 (Tex. App.—Dallas 2013, no pet.) (admission or exclusion of evidence).

In reviewing the legal sufficiency of the evidence to support a jury's finding, we "credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996).

In reviewing the factual sufficiency of the evidence to support a jury's finding, we consider all of the evidence to determine whether the evidence supporting a fact finding is so weak or the evidence to the contrary so overwhelming that the answer is clearly wrong and unjust and should be set aside and a new trial ordered. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

**DISCUSSION**

### 1. Summary judgment for KCSR

In her first issue, Mora argues the trial court erred by granting KCSR's motion for summary judgment because genuine issues of material fact existed concerning whether "KCSR's breach on the railroad crossing" proximately caused Mora's injuries. She argues that KCSR had a duty to maintain the safety precautions it had in place at its railroad crossing, and KCSR does not contend otherwise. She also

argues that when KCSR undertook repairs at a railroad crossing, it had a duty to provide a safe detour or warn travelers of the danger. She argues that Wine's testimony raised a fact issue regarding whether KCSR's warning signals were operating properly at the time of the collision.

KCSR responds that Mora alleged only a single theory of negligence in her petition: that the crossing gate came down "suddenly." Mora did not amend her petition or her discovery responses to allege any other negligence theory. KCSR filed a no-evidence motion for summary judgment on the ground that there was no evidence of either breach of duty or proximate cause, essential elements of Mora's negligence claim. KCSR relied on Wine's testimony that (1) he did not recall the vehicle in front of him stopping suddenly and (2) he never actually saw the gates come down. KCSR also relied on Mora's testimony that she was looking down at her cell phone and "never saw the arms go down."

Mora argues that she presented evidence raising a fact issue on KCSR's breach of duty through her own and Wine's deposition testimony and photographs she took at the scene after the accident. She argues that the evidence "at a minimum, supports an inference that KCSR failed to properly maintain the railroad crossing safety mechanisms, including the lights, sounds, and crossing bucks." She relies on Wine's and her own testimony that:

- Wine was familiar with the route and with the crossing;
- Wine saw the flashing lights at the crossing stop and then start again;

- No "bells or sirens" sounded;

- Had "sirens, whistles, or bells" sounded, Wine and Mora would have heard them;

- Because the car in front of them stopped suddenly, Wine had to stop suddenly; and

- KCSR was "doing some kind of maintenance" on the tracks near the crossing.

Mora also argues on appeal that her photographs from the scene show that the arm of the crossing gate was on top of the hood of the car in front of them.

As to causation, Mora again relies on Wine's testimony that the flashing lights stopped and then started again, causing the car in front of them to stop suddenly. She also relies on her own testimony that she injured her neck, shoulder, and back in the collision and received medical treatment for her injuries.

Mora cites *Osuna v. Southern Pacific Railroad*, 641 S.W.2d 229, 229–30 (Tex. 1982), in support of her arguments. In that case, the railroad had voluntarily erected an automatic signal device at a railroad crossing but then failed to properly maintain it. *See id.* The plaintiff's vehicle collided with a train in the dark when the signal failed to operate. *Id.* The court reversed a summary judgment in favor of the railroad, concluding that Osuna raised a fact issue on the railroad's negligence. *Id.* at 230. The court explained, "[h]aving undertaken to place a flashing light at the crossing for the purpose of warning travelers, the railroad was under a duty to keep the signal in good repair, even though the signal was not legally required." *Id.*

Mora, however, did not allege a malfunction of the signal lights or bells as a cause of the collision, nor did she provide that information in response to a specific discovery request to "[s]tate generally your contention as to how the INCIDENT occurred and identify the acts or omissions of each party that you contend contributed to the INCIDENT." Instead, she responded to the requested discovery with a reference to her petition, where she alleged only that "[t]he railroad crossing gate came down suddenly and without warning causing the vehicle in front of CHARLES WINE'S vehicle to stop suddenly, which caused CHARLES WINE to rear-end the vehicle in front of him." Mora made the identical allegation in her summary judgment response, but then argued:

> Mr. Wine did not hear any sirens, he did not see any trains or anything else crossing the tracks as the lights were flashing. When Mr. Wine saw the lights stop flashing, he was traveling approximately 35 miles per hour. The vehicle in front of him was traveling about the same speed when he saw the lights stop flashing. When Mr. Wine saw the lights stop flashing he took that to mean that the train had already passed and that it was safe and clear for him to go. Suddenly, the lights began flashing again, the vehicle in front of Mr. Wine hit her brakes right away, he hit his brakes right away but was unable to stop in time to avoid the collision. Mr. Wine was familiar with this route. He had seen trains go across this track before. He had never experienced the flashing lights stop then start again immediately. Apparently, the railroad was doing maintenance and the flashing lights came back on for a maintenance machine. [Record citations omitted]

Mora and Wine were the only witnesses deposed. Neither testified that the railroad crossing gate "came down suddenly and without warning." Consequently, there was no evidence to support the allegations in Mora's petition and discovery responses about the cause of the collision. Mora argues that under civil procedure

rule 193.6(a), she could have relied on evidence or information she did not disclose in her discovery response if the trial court found good cause for the failure to supplement and lack of unfair surprise or unfair prejudice to KCSR. *See* TEX. R. CIV. P. 193.6(a). While this is a correct statement of rule 193.6(a), the record does not reflect that Mora made any such request.[1]

Further, even assuming the trial court considered Mora's alternative allegations of KCSR's negligence, there was no evidence that any malfunction of the crossing gate "caus[ed] the vehicle in front of [Wine's] vehicle to stop suddenly." Wine's testimony was that (1) he saw the signal lights go off and then on again as he approached the crossing, but (2) he did not see the gates come down, and (3) he did not recall the vehicle in front of him stopping suddenly. He explained, "I just remember seeing that she had stopped." Although in the same deposition he also testified that the car in front of him did stop suddenly, he did not testify that the cause of the sudden stop was a malfunction of the gate. Mora testified that "Charles was

---

[1] Further, although Mora was not required to marshal her proof, the trial court in turn was not required to search the record for evidence supporting her contentions. *See, e.g., Levine v. Unique Beverage Co.*, No. 05-11-01467-CV, 2013 WL 1281896, at *3 (Tex. App.—Dallas Mar. 19, 2013, pet. denied) (mem. op.). Mora now points to other deposition testimony and her photographs to support her arguments that she raised fact issues. She argues her photographs are evidence from which "[a] jury could find that the Altima [the car in front of Wine] was sitting just under the crossing bucks with the crossing bucks resting on top of its hood," supporting a finding that "the Altima was unable to stop a safe distance from the crossing." But because she did not bring the testimony or photographs to the trial court's attention, the trial court did not err by not considering it. *See id.* ("The trial court was not required to search through the evidence attached to [appellant/non-movant] Best One's response to locate summary judgment evidence raising a genuine issue of material fact without more specific guidance from Best One.").

driving. I looked down on my phone and then all of a sudden he hit a vehicle." She testified that she did not see the green car in front of them "prior to the impact."

Reviewing the evidence in the light most favorable to Mora, we conclude Mora did not "produce[ ] summary judgment evidence raising a genuine issue of material fact" on the causation element of her negligence claim against KCSR. *See* TEX. R. CIV. P. 166a(i) (no-evidence motion). Mora's contention that some malfunction of the crossing arm caused the collision and her injuries is based on her speculation rather than her own or Wine's actual observations at the scene. "Speculation and conjecture will not suffice to preclude summary judgment." *Salinas v. AT&T Servs., Inc.*, No. 05-13-01436-CV, 2014 WL 7248086, at *3 (Tex. App.—Dallas Dec. 22, 2014, no pet.) (mem. op.). Evidence that is "so weak as to do no more than create a surmise or suspicion" of a fact is insufficient to raise a fact issue precluding a no-evidence summary judgment. *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003) (internal quotations omitted). We decide Mora's first issue against her.

## 2. Trial on Mora's claims against Wine

### A. Exclusion of damages summary

In her second issue, Mora contends the trial court erred by refusing to admit her summary of damages into evidence. She argues the error was harmful and probably caused the rendition of an improper judgment.

–9–

The trial court permitted Mora to mark the summary as Exhibit 1 and to use it as a demonstrative exhibit at trial. The summary, on a single page, listed eleven medical providers and showed the dates of service and a total amount charged by each. The summary then added the eleven amounts together, showing a total of $55,533.50. The trial court, however, denied Mora's request to admit Exhibit 1 into evidence.

The jury requested the summary during its deliberations.[2] Although the jury did not have Exhibit 1 in the jury room during its deliberations, all of the supporting exhibits were admitted into evidence. The jury could refer to these supporting exhibits during deliberations. The first pages of plaintiff's exhibits 3, 5, 7, 9, 10, 12, 14, 15, 17, and 19 were one-page billing records affidavits that showed ten of the eleven numbers[3] included on the summary chart. Consequently, the jury had (1) all of the information supporting the numbers shown on Exhibit 1 and (2) the corresponding medical records as well as (3) with one $250 exception, the numbers themselves. In addition, Mora's counsel mentioned the $55,000 figure three times during closing argument. The erroneous admission of evidence is harmless if it is merely cumulative. *Thawer v. Comm'n for Lawyer Discipline*, 523 S.W.3d 177, 184 (Tex. App.—Dallas 2017, no pet.). Further, "[t]he admission of charts or diagrams

---

[2] The clerk's record includes the jury's note, "Can we have the list of total medical expenses?" and the Court's reply: "Thank you for your question. You have all the documents admitted in evidence. The document you're asking about was a demonstrative exhibit and not an independent piece of evidence."

[3] There was no separate billing records affidavit for the $250.00 amount shown on the summary for Bruce A. Cheatham, M.D., although he is referenced in the records of another provider.

which are designed to summarize or emphasize a witness's testimony is a matter which lies within the sound discretion of the trial court." *Schenck v. Ebby Halliday Real Estate, Inc.*, 803 S.W.2d 361, 369 (Tex. App.—Fort Worth 1990, no writ).

After reviewing the entire record, we conclude that the trial court's ruling excluding Exhibit 1 only from the jury room, even if erroneous, "probably [did not] result[ ] in the rendition of an improper judgment." *See McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex. 1992) (explaining standard of review). We decide Mora's second issue against her.

## B. Jury's damages findings

In her third issue, Mora challenges the legal and factual sufficiency of the evidence to support the jury's damages findings. She challenges the jury's findings of $0 for past and future physical pain and mental anguish, $0 for past and future physical impairment, $25,000 for past medical care, and $0 for future medical care.

To establish past medical expenses for personal injuries, a plaintiff must show her injuries were caused by the defendant's negligence, the medical treatment was necessary, and the charges were reasonable. *See Ten Hagen Excavating, Inc. v. Castro–Lopez*, 503 S.W.3d 463, 491–92 (Tex. App.—Dallas 2016, pet. denied). Mora provided affidavits of her medical providers concerning the cost and necessity of medical services. *See* TEX. CIV. PRAC. & REM. CODE § 18.001. The affidavits were sufficient evidence to support a finding that Mora's past medical expenses were reasonable and the services were necessary, but the jury was not required to award

the amount of damages established in the affidavits. *See Id.* § 18.001(b); *Liang v. Edwards*, No. 05-15-01038-CV, 2016 WL 7163841, at *2 (Tex. App.—Dallas Nov. 23, 2016, no pet.) (mem. op.). The affidavits did not establish causation. *See Hong v. Bennett*, 209 S.W.3d 795, 804 n.4 (Tex. App.—Fort Worth 2006, no pet.) (noting that § 18.001 "does not address the issue of causation" and that "[t]hus, there must be some evidence other than section 18.001 affidavits to prove the causal link between an event and damages").[4]

Nor did the affidavits establish physical pain, mental anguish, or physical impairment. *See* TEX. CIV. PRAC. & REM. CODE § 18.001(b). Pain and suffering damages "are inherently amorphous and subjective," and the factfinder has great discretion in awarding them. *Garcia v. Nunez*, No. 05-17-00631-CV, 2018 WL 6065254, at *5 (Tex. App.—Dallas Nov. 20, 2018, no pet.) (mem. op.). Physical impairment is a distinct injury from pain and suffering and includes limitations on physical activities. *Id.* at *6. It also encompasses loss of enjoyment of life and loss of the injured person's former lifestyle. *Id.* An award for mental anguish must be

---

[4] *See also In re Parks*, No. 05-19-00375-CV, 2020 WL 774107, at *2 (Tex. App.—Dallas Feb. 18, 2020, orig. proceeding [mand. pending]) (mem. op.) ("Additionally, because section 18.001 does not pertain to the necessary causal link between the accident and the alleged injuries, a defendant is still free to present evidence that the injuries for which the plaintiff was treated were not caused by the accident in the absence of a section 18.001 affidavit.") (citing *Hong*, 209 S.W.3d at 804 n.4). Expert testimony "is not always required" to establish this causal nexus, but proof of causation is necessary. *See Ten Hagen Excavating, Inc.*, 503 S.W.3d at 489. We note that section 18.001 now explicitly provides that the affidavit is not evidence of causation, but because Mora filed suit prior to the September 1, 2019 effective date of the amendment, the prior version of section 18.001(b) and the case law interpreting the prior version apply here. *See* TEX. CIV. PRAC. & REM. CODE § 18.001(b) ("The affidavit is not evidence of and does not support a finding of the causation element of the cause of action that is the basis for the civil action.").

supported by evidence of either "a substantial disruption in the plaintiff's daily routine" or "a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." *See Bennett v. Grant*, 525 S.W.3d 642, 648 (Tex. 2017). Mora offered only her own testimony on these matters.

Mora testified that:

- Following the collision she was really sore around her neck, shoulder, and back,

- The pain also radiated to her lower back, pelvic area, and hip,

- She experienced numbness and dizziness,

- Her medical records reflect her complaints of significant pain after the collision and include medical findings confirming that she was experiencing pain,

- She testified that she felt "mad, sad, helpless" and "worthless" from the injuries and pain,

- The pain was as severe and constant at the time of trial as it was immediately after the collision,

- At the time of trial she was suffering from throbbing in her neck, sharp pain, pain in her neck and shoulders, and dizzy spells,

- Her pain injections were wearing off and she would need additional injections in the future to alleviate pain, and

- Her movement has been greatly restricted since the collision, and as of the time of trial she still had limitations on moving her arms and rotating her body, and she can no longer dance as she did almost every night before the accident.

In closing argument, Mora's counsel requested:

- $2,000 to $10,000 for physical pain and mental anguish in the past,

- $2,000 to $10,000 for future physical pain and mental anguish,

- $10,000 to $25,000 for physical impairment in the past, and

- $10,000 for physical impairment in the future.

These amounts were in addition to the $55,533.50 Mora requested for past medical care and future medical care of $15,000 to $150,000.

Wine responds that the jury was free to reach a verdict on past medical damages other than the amount requested, and could also choose not to award subjective damages for physical pain, mental anguish, and physical impairment. He argues the evidence showed that:

- The accident "was not severe." There was no evidence that the car's air bag deployed or that emergency medical services were called to the scene. Wine testified that he "slid into" the car in front of them;

- The jury was shown a photograph showing limited damage to the right front bumper of Wine's vehicle;

- At the time of the accident, Wine got out and exchanged insurance information with the other driver, then he and Mora went home for lunch;

- Mora testified she was only a "little sore" after the accident and went to work the following morning;

- It was "a few days to a week afterwards" when Mora first told Wine she had pain in her shoulder area and might "need to get checked out";

- Mora's initial claim of back pain "evolved into claims of neck, hip, back and arm pain over an extended period of time, as well as headaches, numbness, and dizziness";

- There was a long delay between the accident and Mora's complaints of neurological symptoms, and two months after the accident during a visit to a medical provider, she denied any "numbness, tingling or weakness";

- The admitted medical records are "vague regarding the cause and severity of [Mora's] injuries, indicating only that [Mora] self-reported that her alleged neck and upper back pain were a result of the November 2014 accident," and

- Mora attributed four years of medical treatment, including spinal injections, to the accident, but the jury also heard evidence that Mora was involved in another car accident in 2011 that also resulted in neck and back pain and required treatment by a chiropractor, and that Mora was receiving hydrocodone for headache and back pain in 2013.

We first conclude that the trial court did not err by rendering judgment on the amount found by the jury for past medical expenses. The amount the jury awarded was within the range of evidence offered and admitted at trial. The jury could have concluded that some, but not all, of the amounts would "fairly and reasonably compensate [Mora] for her injuries, if any, that resulted from the occurrence in question" in response to Question 2 of the jury charge. The jury was also instructed, "Do not include any amount for any condition existing before the occurrence in question, except to the extent, if any, that such other condition was aggravated by any injuries that resulted from the occurrence in question."

The jury could have reached its $25,000 award in a number of ways. It could have awarded the amounts Mora incurred within a certain time period after the date of the collision, for example, or awarded only expenses incurred for certain alleged injuries. The jury was the sole judge of the credibility of the evidence, and Mora did not offer the testimony of any of her medical providers who might have linked the treatment they provided to the collision.

Regarding the jury's zero awards for "physical pain and mental anguish" in the past and future and "physical impairment" in the past and future, the jury "has 'great discretion' in considering damages-related evidence, and it is particularly within the jury's province to resolve necessarily speculative matters such as pain and mental anguish and to decide what amounts (if any) to award for such things." *Blevins v. State Farm Mut. Auto. Ins. Co.*, No. 02-17-00276-CV, 2018 WL 5993445, at *9 (Tex. App.—Fort Worth Nov. 15, 2018, no pet.) (mem. op.) (quoting *In re State Farm Mut. Auto. Ins. Co.*, 483 S.W.3d 249, 263 (Tex. App.—Fort Worth 2016, orig. proceeding)). In *Blevins*, the court also explained that "[e]ven objective evidence of an injury does not mandate a damages award [for pain or mental anguish] if the injury is 'less serious and accompanied only by subjective complaints of pain,' particularly where an award of past medical expenses is made." *Id.* (quoting *State Farm*, 483 S.W.3d at 264).

In *Curtin v. Poindexter*, No. 04-17-00123-CV, 2018 WL 3130987, at *5–6 (Tex. App.—San Antonio June 27, 2018, no pet.) (mem. op.), the plaintiff offered evidence that his past medical expenses totaled $92,000 for treatment of his injuries after a car accident, and like Mora, he sought damages for past and future physical pain and mental anguish and for physical impairment. The jury awarded $12,500 for past medical expenses, and did not find any damages for physical pain, mental anguish, or physical impairment. *Id.* at *5. In addition to section 18.001 affidavits from his medical providers, Curtin offered expert witnesses who testified about his

–16–

past medical expenses. *See id.* But there was also controverting evidence about whether and to what extent Curtin was injured in the accident. *Id.* at \*6. Affirming the trial court's judgment on the jury's verdict, the court of appeals concluded the jury's verdict was not clearly wrong, manifestly unjust, or against the great weight and preponderance of the evidence. *Id.* at \*7. The court explained that "whether to award damages and how much is uniquely within the factfinder's discretion." *Id.* at \*6 (internal quotations omitted); *see also Grove v. Overby*, No. 03-03-00700-CV, 2004 WL 1686326, at \*7–8 (Tex. App.—Austin July 29, 2004, no pet.) (mem. op.) (it was within jury's discretion to find that plaintiff's pain, mental anguish, and impairment were not caused by the collision in question).

After reviewing all of the evidence in the light favorable to the jury's findings, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, we conclude that there is legally sufficient evidence to support the jury's zero damages findings for "physical pain and mental anguish" in the past and future and "physical impairment" in the past and future. *See City of Keller*, 168 S.W.3d at 827. Likewise, after considering and weighing all of the evidence, we cannot say that the evidence supporting the jury's findings is so weak or so contrary to the overwhelming weight of the evidence that they should be set aside and a new trial ordered. *See Dow Chem. Co.*, 46 S.W.3d at 242. We decide Mora's third issue against her.

## CONCLUSION

We affirm the trial court's judgment.

/Leslie Osborne/

LESLIE OSBORNE
JUSTICE

190874F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

MELINDA MORA, Appellant

No. 05-19-00874-CV          V.

CHARLES WINE AND THE
KANSAS CITY SOUTHERN
RAILWAY COMPANY, Appellees

On Appeal from the County Court at
Law No. 5, Dallas County, Texas
Trial Court Cause No. CC-16-05690-
E.
Opinion delivered by Justice
Osborne. Justices Schenck and
Partida-Kipness participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Charles Wine and The Kansas City Southern Railway Company recover their costs of this appeal from appellant Melinda Mora.

Judgment entered January 8, 2021