**Affirmed and Opinion Filed December 12, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-00462-CV

**PEDRO DIAZ, Appellant**
**V.**
**MULTI SERVICE TECHNOLOGY SOLUTIONS CORPORATION, A MISSOURI CORPORATION, Appellee**

**On Appeal from the County Court at Law No. 3**
**Dallas County, Texas**
**Trial Court Cause No. CC-13-01850-C**

## MEMORANDUM OPINION
Before Justices Stoddart, Whitehill, and Boatright
Opinion by Justice Stoddart

This is an appeal from a judgment notwithstanding the verdict following a remand from this Court for a new trial on damages. Multi Service Technology Solutions Corporation (MSTSC) sued Pedro Diaz on a sworn account and for breach of contract. Diaz did not answer the suit and a default judgment was rendered against him. In a restricted appeal, this Court reversed the award of damages and remanded for a new trial on damages. *See Diaz v. Multi Serv. Tech. Sols. Corp.*, No. 05-14-00032-CV, 2014 WL 5768714, at *1 (Tex. App.—Dallas Nov. 6, 2014, no pet.). After the jury returned a verdict of no damages, the trial court granted MSTSC's motion for JNOV and rendered judgment for damages and prejudgment interest. Diaz appeals and argues in four issues that MSTSC lacks standing in this case, the trial court should have dismissed the suit based on a partial summary judgment against an intervening party, the

JNOV was erroneous because the evidence presented credibility issues for the jury to resolve, and the trial court abused its discretion by admitting collection call notes in evidence. We affirm the trial court's judgment.

## BACKGROUND

In the restricted appeal, this Court concluded that Diaz admitted all the allegations in plaintiff's original petition except for the amount of unliquidated damages, "and Diaz is precluded from challenging the legal and factual sufficiency of the evidence supporting the liability of Pedro Diaz dba G & O Diaz Trucking to MSTSC." *Diaz*, 2014 WL 5768714, at \*3. The Court also concluded the evidence was insufficient to support the award of damages to MSTSC. The affidavits attached to the original petition and filed in support of the default judgment were from a company called Multi Service Technology Solutions Inc. (MSTSI), a Florida corporation. *Id*. at \*4. The affidavits attached business records of MSTSI, including a cardholder agreement between G & O Diaz Inc., personally guaranteed by Diaz, and Multi Service Corporation (MSC), a summary of G & O Diaz Inc.'s MSC fuel card account, and copies of MSC's account billing statements and "Multi Service Fleet" transaction reports showing the amounts and dates of charges of G & O Diaz Inc. *Id*. The Court stated:

> There is clearly disharmony among MSTSC's petition, the documents attached to MSTSC's pleading, and the business records filed by MSTSI. Those documents and business records contain no reference to either MSTSC or MSTSI. Instead, those documents and business records reflect an Agreement entered into by G & O Diaz, Inc., signed by Diaz as guarantor and president, with MSC and the amounts and dates of charges on that MSC account. Here, the amount of MSTSC's damages, if any, cannot be accurately calculated from its petition, attached documentation, and business records filed by MSTSI. MSTSC acknowledged in its appellate brief that suit was filed by MSTSC, a Missouri corporation, rather than MSTSI, a Florida corporation. MSTSC states in its appellate brief that the "original creditor," MSC, "had been acquired by Multi Services Technology Corporation just prior to the filing of the suit" and, "[t]his contract was assigned to the successor company as part of the acquisition." Nothing in the record establishes MSC was acquired by Multi Services Technology Corporation. Nothing in the record establishes any relationship between Multi Services Technology Corporation and MSTSC. Nothing in the

record establishes any relationship between MSTSC and MSTSI. Further, nothing in the record establishes an assignment by MSC of its contract with G & O Diaz, Inc.

*Id.* at *4 (footnote omitted). This Court affirmed the default judgment as to liability of Diaz to MSTSC, reversed the award of damages and attorney's fees, and remanded for a new trial on damages. *Id.* at *5.

On remand, MSTSC filed a first amended petition naming MSTSI as the plaintiff. The petition alleged the following facts regarding ownership of the account: Diaz entered into a credit account with MSC in 2008 in the name of G & O Diaz Inc. and personally guaranteed the account; certain assets of MSC, including Diaz's account, were sold to World Fuel Services in December 2012; and World Fuel Services transferred the account to MSTSI in January 2013. The first amended petition alleged that this suit was filed in March 2013 with the plaintiff incorrectly named as MSTSC as shown by the affidavit attached to the original petition, which correctly named the owner of the debt as MSTSI. Plaintiff also filed a motion to change the name of the plaintiff to MSTSI, supported by an affidavit describing the transactions alleged in the first amended petition.

Diaz objected to the first amended petition and moved to strike it, arguing the amendment violated the mandate of this Court as an attempt to relitigate the issue of liability in violation of the law of the case doctrine. The record does not indicate that the trial court ruled on either the motion to strike the first amended petition or the motion to change the name of the plaintiff.

Later, MSTSI filed a petition in intervention asserting it was the current owner of the debt and the correct plaintiff in the lawsuit. MSTSI argued intervention was necessary because, "The current plaintiff is [MSTSC] and despite several attempts it seems this cannot be changed in the suit." In response, Diaz filed a combined traditional and no-evidence motion for summary judgment. He argued that MSTSI could not establish the elements necessary for intervention and

could not relitigate liability because the *Diaz* opinion found that liability of Diaz to MSTSC was established by the default judgment. In addition, Diaz moved for no-evidence summary judgment against MSTSC on the ground that it had no evidence of damages. The trial court granted summary judgment against MSTSI as intervenor and ordered that it take nothing on its claims, but did not grant the no-evidence summary judgment against MSTSC.

The state of the pleadings was discussed in detail at the pretrial conference. The trial court eventually stated that the case would be tried under the original petition. Thereafter, the jury was selected and trial began.

David Schongar testified on behalf of MSTSC. He is the director of credit and risk management for both MSTSC and MSTSI. He began working for the former company, MSC, in 1998. The evidence includes exhibit one, a business records affidavit signed by Doretta M. Watson on behalf of MSTSI in June 2013. Attached to the affidavit is a written cardholder agreement between G & O Diaz Inc. and MSC executed in 2008. Diaz personally guaranteed the agreement. The business records also include two statements on Diaz's account totaling $18,293.14 as of March 2012.

Schongar testified that in December 2012 World Fuel Services purchased the assets of MSC and formed MSTSI. The assets of MSC were then assigned to MSTSI. He explained this was merely a name change and the offices, most of the employees, and the computer systems remained the same.

Schongar also testified that this lawsuit was filed in the wrong name because MSTSC did not exist in 2013. In order to correct the problem with the name of the company, it was later decided to form MSTSC in Missouri and Diaz's account was assigned from MSTSI to MSTSC in January 2016. Schongar testified the account is now owned by MSTSC, there have been no payments on the account balance of $18,293.14, and that amount is now owed to MSTSC.

Exhibit two is an assignment of the Diaz's account from MSTSI to MSTSC signed by Schongar on behalf of MSTSI. Schongar testified this assignment was executed in January 2016, although the document is not dated. The assignment recites the amount of the account, $18,293.14, the account was created by MSC in 2008, and was transferred to MSTSI. The same account documents as attached to the business records affidavit are attached to the assignment.

The jury was asked a single question, "How much do you find is owed, if anything, as to MSTSC?" The jury answered, "Zero."

MSTSC moved for JNOV arguing that no evidence supported the jury's finding and the evidence conclusively established it right to judgment. The trial court granted the motion and rendered judgment awarding MSTSC $18,293.14, prejudgment interest, and costs. Diaz's motion for new trial was overruled by operation of law.

## ANALYSIS

### A. Standing

In his first issue, Diaz argues that MSTSC does not have standing to bring this suit and the case should dismissed for lack of jurisdiction.

Standing is a component of subject matter jurisdiction. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443, 446 (Tex. 1993). As such, standing cannot be waived and can be challenged for the first time on appeal. *Tex. Ass'n of Bus.*, at 445–46. Whether a trial court has subject-matter jurisdiction is a question of law that is reviewed de novo. *See Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). Standing must exist at the time a plaintiff files suit; if the plaintiff lacks standing at the time of filing, the case must be dismissed, even if the plaintiff later acquires an interest sufficient to support standing. *Martin v. Clinical Pathology Labs., Inc.*, 343 S.W.3d 885, 887–89 (Tex. App.—Dallas 2011, pet. denied); *Doran v. ClubCorp*

*USA, Inc.*, No. 05–06–01511–CV, 2008 WL 451879, at *2 (Tex. App.—Dallas Feb. 21, 2008, no pet.) (mem. op.).

To have standing, the pleader bears the burden of alleging facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. "The general test for standing in Texas requires that there '(a) shall be a real controversy between the parties, which (b) will be actually determined by the judicial declaration sought.'" *Sneed v. Webre*, 465 S.W.3d 169, 180 (Tex. 2015) (citations omitted); *see also DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008) (for standing, the plaintiff must be personally aggrieved, and his alleged injury must be concrete and particularized, actual or imminent, not hypothetical). We review the pleadings and the entire record to determine if there is evidence establishing subject matter jurisdiction. *Dallas Cty. Appraisal Dist. v. Funds Recovery*, 887 S.W.2d 465, 469 (Tex. App.—Dallas 1994, writ denied).

Diaz contends MSTSC lacks standing because it did not own the debt at the time the suit was originally filed in 2013, having only received the debt by assignment in 2016.

Because standing is challenged for the first time on appeal, we construe the pleadings in favor of the plaintiff and examine the entire record for evidence supporting jurisdiction. *RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 429 (Tex. 2016) (per curiam). Although the original petition named MSTSC as the plaintiff, the attached affidavit identified MSTSI as the owner of the account, even though it failed to explain how the account was transferred from MSC, the original creditor shown in the cardholder agreement, to MSTSI.

On remand, evidence was admitted that MSTSC did not exist at the time the suit was filed and plaintiff's attorney mistakenly named MSTSC as the plaintiff rather than MSTSI. Schongar's testimony and the cardholder agreement establish that the account was created in 2008 between G & O Diaz Inc. and MSC and was personally guaranteed by Diaz. Schongar

testified that the assets of MSC were acquired by World Fuel Services in 2012 and the account was assigned to a new corporation, MSTSI, formed in Florida in December 2012 or early 2013. He explained that the lawsuit was mistakenly filed in the name of the wrong company, MSTSC, a company that did not exist at the time. He also testified that to correct the problem with the name, MSTSC was formed in Missouri and the account was assigned from MSTSI to MSTSC in January 2016. The written assignment transferred all of MSTSI's right, title, and interest in the account to MSTSC. Schongar testified that MSTSC is the owner of the account and the account balance of $18,293.14 is owed to MSTSC.

In the prior restricted appeal, based on a limited record, this Court concluded this case involved a misidentification of the plaintiff rather than a misnomer:

> This case involves misidentification of the plaintiff in the original petition, not misnomer. MSTSC acknowledged in its appellate brief that suit was filed by MSTSC, a Missouri corporation, rather than MSTSI, a Florida corporation. MSTSC did not merely misname the correct plaintiff, which would have constituted misnomer. Rather, MSTSC filed suit in its name but obtained an award of damages in favor of MSTSI, a separate legal entity.

*Diaz*, 2014 WL 5768714, at *2 n.3. However, in light of the record developed on remand, we conclude this is actually a case of misnomer, not misidentification.

Misnomer arises "when a party misnames itself or another party, but the correct parties are involved." *In re Greater Hous. Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2009) (per curiam). A plaintiff misnaming itself generally is a misnomer. *See Chen v. Breckenridge Estates Homeowners Ass'n, Inc.*, 227 S.W.3d 419, 421 (Tex. App.—Dallas 2007, no pet.); *Pierson v. SMS Fin. II, L.L.C.*, 959 S.W.2d 343, 347–48 (Tex. App.—Texarkana 1998, no pet.). Misidentification occurs when two separate entities exist and the wrong entity is named in the suit. *See Reddy P'ship/5900 N. Freeway LP v. Harris Cty. Appraisal Dist.*, 370 S.W.3d 373, 376 (Tex. 2012); *In re Greater Hous. Orthopaedic Specialists*, 295 S.W.3d at 325 (misidentification "arises when *two separate legal entities exist* and a plaintiff mistakenly sues

an entity with a name similar to that of the correct entity") (emphasis added).

Based on the record as developed on remand, this is a case of misnomer of the plaintiff, rather than misidentification, because the record establishes that MSTSC did not exist at the time suit was filed. Because of this change in the record, the law of the case doctrine does not apply. *See Entergy Corp. v. Jenkins*, 469 S.W.3d 330, 336–37 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (law of the case doctrine "does not necessarily apply when either the issues or the facts presented in successive appeals are not substantially the same as those involved in the first trial"); *Pitman v. Lightfoot*, 937 S.W.2d 496, 513 (Tex. App.—San Antonio 1996, writ denied).[1]

"When the correct party sues or is sued under the incorrect name, 'the court acquires jurisdiction after service with the misnomer if it is clear that no one was misled or placed at a disadvantage by the error.'" *Reddy P'ship/5900 N. Freeway LP v. Harris Cty. Appraisal Dist.*, 370 S.W.3d 373, 376–77 (Tex. 2012) (per curiam) (quoting *Sheldon v. Emergency Med. Consultants, I, P.A.*, 43 S.W.3d 701, 702 (Tex. App.—Fort Worth 2001, no pet.)). Courts generally allow parties to correct a misnomer so long as it is not misleading. *Reddy P'ship/5900*, 370 S.W.3d at 377. "In a case like this, in which the plaintiff misnames itself, the rationale for flexibility in the typical misnomer case—in which a plaintiff misnames the defendant—applies with even greater force." *In re Greater Hous. Orthopaedic Specialists, Inc.*, 295 S.W.3d at 326.

Diaz relies on *Shipley v. Unifund CCR Partners*, 331 S.W.3d 27 (Tex. App.—Waco 2010, no pet.), where a judgment was reversed because there was no evidence of an assignment of ownership of the account into the named plaintiff. In *Shipley*, Unifund Portfolio A, LLC received an assignment of the account from Citibank South Dakota, N.A. *Id.* at 28. Unifund

---

[1] The law of the case doctrine is defined as "that principle under which questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages." *Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex. 2006). The doctrine applies only to questions of law, not questions of fact. *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986). The doctrine is discretionary and does not absolutely bar reconsideration of the issue in a second appeal. *Biscoe v. Goodmark Corp.*, 102 S.W.3d 714, 716 (Tex. 2003). Additionally, the doctrine does not apply if the original decision was clearly erroneous. *Id.*

Portfolio A, LLC, then assigned only the right to collect the account to the plaintiff in the lawsuit, Unifund CCR Partners. *Id*. Unifund Portfolio A, LLC, retained the title to and ownership of the account. *Id*. The Waco Court of Appeals concluded on rehearing that Unifund CCR Partners lacked standing based on the assignment. *Id*. at 29 ("[T]he assignment from Unifund Portfolio A, LLC to Unifund CCR Partners indicates that Unifund CCR Partners owns nothing."). In this case, however, the assignment from MSTSI to MSTSC is complete and unlimited, unlike the assignment at issue in *Shipley*. MSTSI assigned all of its right, title, and interest in the account to MSTSC and Schongar testified that MSTSC now owns the account. Therefore, *Shipley* is not on point.

Based on the record as a whole, it is clear that the correct parties were involved in the suit, although MSTSI was incorrectly named as MSTSC at the beginning. We conclude that as a result of the misnomer, suit was filed by a party with standing to sue and the court acquired jurisdiction. *See Reddy P'ship/5900 N. Freeway LP*, 370 S.W.3d at 376–77. We overrule Diaz's first issue.

**B. Partial Summary Judgment**

In his second issue, Diaz argues the trial court erred by not dismissing the entire lawsuit after it granted his motion for summary judgment challenging MSTSI's intervention.

On appeal, Diaz asserts that the summary judgment was a final judgment because the first amended petition substituted MSTSI as plaintiff and dropped MSTSC as plaintiff. However, Diaz's motion sought summary judgment against both MSTSI as intervenor and MSTSC. He never argued in the motion that MSTSC was no longer a party to the lawsuit. Diaz alleged in the motion the he "filed a Traditional and No-Evidence Motion against MSTSI's Petition in Intervention on the basis of re-litigation of the issue." He also sought a no-evidence summary judgment against MSTSC by challenging its evidence of damages. He argued MSTSI could not

establish the elements required for intervention because liability had been decided and MSTSI did not have a justiciable interest. He further argued that MSTSC did not have the right to amend its petition on remand and had no evidence of damages. Thus, Diaz indicated MSTSC was still a party to the case. The trial court granted summary judgment only on the claim by intervenor MSTSI. It did not grant the no-evidence motion for summary judgment against MSTSC.

Based on the entire record, we conclude the summary judgment, even though it states "all relief not specifically granted is hereby denied," was not a final judgment. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 203–04 (Tex. 2001) ("[I]nclusion of a Mother Hubbard clause—by which we mean the statement, "all relief not granted is denied", or essentially those words—does not indicate that a judgment rendered without a conventional trial is final for purposes of appeal."). On its face, the summary judgment did not dispose of Diaz's no-evidence motion against MSTSC. Therefore, the summary judgment was interlocutory and did not require the trial court to dismiss the entire case. We overrule Diaz's second issue.

## C. Judgment Notwithstanding The Verdict

In his third issue, Diaz argues the trial court erred by granting judgment notwithstanding the verdict because the evidence presented credibility issues for the jury.

A trial court may disregard a jury's verdict and render judgment notwithstanding the verdict pursuant to rule 301 if no evidence supports the jury's findings or if a directed verdict would have been proper. TEX. R. CIV. P. 301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003). We review a trial court's decision to grant or deny a motion for JNOV under the legal sufficiency standard of review. *Helping Hands Home Care, Inc. v. Home Health of Tarrant Cty., Inc.*, 393 S.W.3d 492, 515 (Tex. App.—Dallas 2013, pets. denied); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005) (test for legal sufficiency is same for directed verdict,

JNOV, and appellate no-evidence review). We credit evidence favoring the jury verdict if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009). We will uphold the jury's finding if it is supported by more than a scintilla of competent evidence. *Id.*; *see also Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998) (appellate court will sustain a no-evidence issue when: (1) record discloses a complete absence of evidence of vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) only evidence offered to prove a vital fact is no more than a mere scintilla; or (4) evidence establishes conclusively the opposite of the vital fact).

To sustain his issue, Diaz must show on appeal that there is more than a scintilla of evidence to support the jury's finding that MSTSC is entitled to no damages. Diaz contends Schongar's testimony was inconsistent and contradictory in the following ways:

- There were contradictions in the testimony about MSTSC
- He was uncertain of the meaning of custodian of the records
- The assignment from MSTSI to MSTSC was not dated and could have been signed the night before trial
- He was uncertain of the name of the company in the judgment regarding liability
- He gave a specific date for the assignment of the account from MSC to MSTSI after earlier stating an inexact time frame

Diaz asserts Schongar's testimony was contradictory about MSTSC because Schongar initially said he first went to work for MSTSC, but later said he began working for MSC in 1998. Diaz also urges that Schongar referred at one point to MSTSC as the company purchased by World Fuel Services in 2012, but later testified that MSTSC did not exist in 2013 when the lawsuit was filed and was formed shortly before the assignment of the debt from MSTSI in January 2016.

Undoubtedly, the similarity in the names of the companies involved in this suit has caused some confusion. But that confusion is clarified when the record is considered as a whole.

Schongar testified three corporations were involved with this debt: MSTSC, MSTSI, and MSC. The cardholder agreement establishes that the company Diaz contracted with in 2008 was MSC. The jury was not free to disregard this undisputed evidence. And in his later testimony, Schongar clearly testified that MSC was purchased by World Fuel Services in 2012. Although Schongar mistakenly referred to the company as MSTSC at times, the only reasonable conclusion from the evidence is that Schongar misspoke when he referred to the original company as MSTSC.

Diaz contends Schongar's testimony was inconsistent regarding the custodian of the records for the various companies. At one point, Schongar stated he did not know the meaning of the phrase "custodian of the records," but he also testified he was in charge of all the records and the records were maintained in the company's computer system. He explained that part of his job is to review the documents to assure that employees are following the processes and procedures of the company, that credit lines are appropriate, and that collection procedures are followed. Moreover, questions about the custodian of records are legal questions for the court to decide in ruling on the admissibility of evidence, not questions of fact for the jury. *See* TEX. R. EVID. 104(a) ("The court must decide any preliminary question about whether . . . evidence is admissible."); 803(6). The jury was not asked any questions about the custodian of records for the companies.

Regarding the assignment from MSTSI to MSTSC, this transaction was evidenced by the written assignment admitted in evidence. The assignment assigns all right, title, and interest of MSTSI in the Diaz account to MSTSC. Attached to the assignment are the business records regarding the account that were attached to the business records affidavit admitted as exhibit one. Schongar testified that the assignment was done in January 2016. He agreed, however, with Diaz's counsel that the document was not dated and could have been signed the night before

trial. This mere possibility, however, did not raise a material question of fact for the jury. The fact of the assignment from MSTSI to MSTSC was undisputed and the jury was not free to disregard the undisputed written evidence of the assignment or Schongar's testimony that MSTSC owned the account and was owed the debt.

Diaz argues Schongar gave conflicting testimony about the name of the company in the default judgment. Schongar expressed some confusion regarding the name of the company on the default judgment that was the subject of the prior appeal. He stated that he understood that the judgment was for MSTSC. Counsel for Diaz asked if that was the Florida corporation. Schongar stated that MSC was a Missouri corporation and he thought the judgment may have been for MSC. When asked how MSTSI became involved in the judgment, Schongar explained that all the activity up until 2012 was under MSC. MSTSI was a Florida corporation formed when World Fuel Services purchased MSC. Everything from MSC was assigned to MSTSI. He concluded that he understood the judgment was issued in the name of MSTSC.

This evidence does not raise a fact question for the jury. The default judgment is a matter of record and no question regarding that judgment was submitted to the jury. Questions of law and uncontroverted issues need not be submitted to the jury. *City of Keller*, 168 S.W.3d at 814–815.

Diaz next argues Schongar's testimony was inconsistent about the assignment of the debt to MSTSI. Questioned about the accrual of interest, Schongar explained that payments were due the next day after the billing date and the billing dates were March 19 and 26 of 2012. The court then asked if payment was due at that time to MSC. Schongar replied, "Yes, the original company. Multi Service Corporation." The Court then asked:

> THE COURT: So I think we're asking when was the debt assigned before 2016. So starting with MSC, when was it assigned?
>
> THE WITNESS: It became Inc. Florida when we were purchased. So that

–13–

would have been 12-31-2012.

[DIAZ'S COUNSEL:] Judge, this is in contradiction with his testimony. His testimony was it was in 2016. He can't have it both ways.

THE COURT: Overruled.

THE WITNESS: The Florida was set up when we were purchased. That was 2012. The end of 2012, beginning 2013. The Missouri corporation, the assignment was January 2016. That was how we got all three different entities involved.

Diaz argues Schongar's testimony is inconsistent because he gave an exact date of December 31, 2012 in response to the question, because he testified several times that MSTSI was formed at the end of 2012 or beginning of 2013 and the debt was assigned to it afterwards. We cannot agree that a reasonable jury could conclude Schongar was not credible because he gave an exact date of December 31, 2012 after earlier testifying that MSTSI was formed in December 2012 or early 2013. The exact date given is within the time frame he testified to and consistent with his testimony.

It is generally true that a fact finder is free to believe all, part, or none of the testimony of a witness, but a fact-finder's "decisions regarding credibility must be reasonable." *City of Keller*, 168 S.W.3d at 820. The fact finder "cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." *Id.* Nor may jurors reach a verdict contrary to undisputed evidence that allows of only one logical inference. *Id*. at 814.

The evidence established a debt owed to MSC by G&O Diaz Inc., which was guaranteed by Diaz, arising out of charges under the cardholder agreement. Schongar's testimony showed that the assets of MSC, including the debt owed by G&O Diaz Inc. and Diaz, were sold to World Fuel Services. His testimony also indicated the debt was later transferred to MSTSI, a Florida corporation formed in December 2012 or January 2013. The written assignment admitted as exhibit two and Schongar's testimony established that the debt was then assigned by MSTSI to

–14–

MSTSC. Schongar testified that the debt in the amount of $18,293.14 has never been paid and is owed to MSTSC. Based on all the evidence in the record, viewed in the light most favorable to the jury's verdict, we conclude there is no evidence to support the jury's finding and the evidence conclusively establishes MSTSC's damages in the amount of $18,293.14. Accordingly, the trial court properly granted MSTSC's motion for judgment notwithstanding the verdict. We overrule Diaz's third issue.

### D. Evidence Ruling

In his fourth issue, Diaz argues the trial court abused its discretion by admitting exhibit three over his hearsay objection. Exhibit three contains collection call notes, which record customer contacts made by employees of MSC starting in June 2008 and continuing through July 2012. Diaz argues that while records created by one business may become the business records of another business, Schongar was not qualified to testify about the other business's record keeping.

Business records are admissible as an exception to the hearsay rule based on the testimony of the custodian "or *other qualified witness*." TEX. R. EVID. 803(6)(D) (emphasis added). The witness must show:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

> (B) the record was kept in the course of a regularly conducted business activity; [and]

> (C) making the record was a regular practice of that activity.

TEX. R. EVID. 803(6)(A)–(C). The rules of evidence do not require that the qualified witness who lays the predicate for the admission of business records be their creator, be an employee of the same company as the creator, or have personal knowledge of the contents of the record- personal knowledge of how the documents were prepared will suffice. *See Thawer v. Comm'n for Lawyer Discipline*, 523 S.W.3d 177, 186 (Tex. App.—Dallas 2017, no pet.); *In re E.A.K.*,

192 S.W.3d 133, 142 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("Rule 803(6) does not require that the witness laying the predicate for admission of a document be the creator of the document or even an employee of the same company as the creator. The witness does not even have to have personal knowledge of the information recorded in the document but need only have knowledge of how the records were prepared." [Citations omitted]).

A document can comprise the records of another business if the second business determines the accuracy of the information generated by the first business. *See Duncan Dev., Inc. v. Haney*, 634 S.W.2d 811, 812–13 (Tex. 1982) (subcontractor's invoices became integral part of builder's records where builder's employees' regular responsibilities required them to verify subcontractors' performance and accuracy of the invoices); *Cockrell v. Republic Mortg. Ins. Co.*, 817 S.W.2d 106, 112–13 (Tex. App.—Dallas 1991, no writ). In addition, records created by one business may be admissible as business records of another business if "(1) the records are incorporated and kept in the course of [the second company's] business, (2) [the company] typically relies upon the accuracy of the records' contents, and (3) the circumstances otherwise indicate the document's trustworthiness." *Nat'l Health Res. Corp. v. TBF Fin., LLC*, 429 S.W.3d 125, 130–31 (Tex. App.—Dallas 2014, no pet.); *Simien v. Unifund CCR Partners*, 321 S.W.3d 235, 240–41 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

Schongar testified he began working for MSC in 1998. He also testified that he was credit manager for MSC before 2008, that he trained the person who took over that department when Schongar went to another department, and that he returned as director in 2012 after Diaz's account was established. He testified that the call notes are made by credit collection representatives when they make a call to a customer. The notes are business records of the companies. He explained that the call notes were part of the business records passed on to the Florida corporation, MSTSI, and that MSTSC received everything that MSTSI had, including the

computer system containing the call notes. Part of Schongar's duties involved reviewing the records for compliance with collection procedures.

We conclude the trial court did not abuse its discretion by admitting the collection call notes as business records of MSTSC. Further, Diaz fails to show in his brief how any error in admitting the collection call notes probably resulted in the rendition of an improper judgment or prevented him from properly presenting the case to us. TEX. R. APP. P. 44.1(a). We conclude that the error, if any, in admitting the collection call notes was harmless. We overrule Diaz's fourth issue.

### CONCLUSION

Having rejected all of Diaz's issues, we affirm the trial court's judgment.


/Craig Stoddart/
CRAIG STODDART
JUSTICE

170462F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

PEDRO DIAZ, Appellant

No. 05-17-00462-CV      V.

MULTI SERVICE TECHNOLOGY
SOLUTIONS CORPORATION, A
MISSOURI CORPORATION, Appellee

On Appeal from the County Court at Law
No. 3, Dallas County, Texas
Trial Court Cause No. CC-13-01850-C.
Opinion delivered by Justice Stoddart.
Justices Whitehill and Boatright
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee MULTI SERVICE TECHNOLOGY SOLUTIONS CORPORATION, A MISSOURI CORPORATION recover its costs of this appeal from appellant PEDRO DIAZ.

Judgment entered this 12th day of December, 2018.